FILED

2011 MAR -4 A 9: 21

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   JOEL H. SIEGAL, ESQ. [SBN: 117044]
    Attorney at Law
2   703 Market Street, Suite 801
    San Francisco, CA 94103
3   Telephone:    (415) 777-5547
4   Facsimile:    (415) 777-5247
    Email:        joelsiegal@yahoo.com
5
6   NEAL M. SHER, ESQ. [New York Bar # 1092329]
    Attorney at Law
7   551 Fifth Avenue, 31st Floor
    New York, NY 10176
8   Telephone:    (626) 201-8841
    Email:        nealsher@gmail.com
9

E-filing

10  Attorneys For Plaintiff JESSICA FELBER

11              UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13              SAN FRANCISCO/OAKLAND DIVISION

DMR

14

15  JESSICA FELBER,                    Case No.  CV11      1012

16              Plaintiff,             CIVIL RIGHTS COMPLAINT FOR
                                       DAMAGES RE ENDANGERMENT OF
17  vs.                                HEALTH AND SAFETY OF JEWISH
                                       UNIVERSITY OF CALIFORNIA
18  MARK G. YUDOF, PRESIDENT           STUDENT JESSICA FELBER: REQUEST FOR JURY
    OF THE REGENTS OF THE              TRIAL
19  UNIVERSITY OF
    CALIFORNIA;
    BERKELEY; THE REGENTS OF           1)  United States Constitution–Amendment I
20  THE UNIVERSITY OF                  2)  42 U.S.C. Sections 1983 and 1985;
    CALIFORNIA; THE                    3)  Title VI of the Civil Rights Act of 1964;
21  UNIVERSITY OF CALIFORNIA,          4)  Violations of Civil Code
    BERKELEY; ROBERT J.                    Sections 51, 51.5, 51.7, 52, 52.1;
22  BIRGENEAU, CHANCELLOR OF           5)  Violation of California Constitution Article 1,
    THE UNIVERSITY OF                      Sections 2, 4, 7;
23  CALIFORNIA, BERKELEY;              6)  Violation of California Government Code
    ASSOCIATED STUDENTS                    Section 11135;
24  UNIVERSITY OF CALIFORNIA           7)  Breach of Fiduciary Duty
    (ASUC); ASUC AUXILIARY             8)  Negligence
25                                     9)  Premise Liability
                Defendants.
26

27

28

CIVIL RIGHTS COMPLAINT FOR DAMAGES                Complaint_Felber_030311.doc
                                                  Case No.

1

**COMPLAINT**

2       Plaintiff JESSICA FELBER ("Jessica") alleges:

3

**INTRODUCTION**

4       On March 5, 2010, Jessica Felber, a twenty year old Jewish student at the University of

5   California, Berkeley ("UCB" or UC Berkeley") was attacked and injured on defendant UC

6   Berkeley's campus.

7       Jessica was assaulted that day because of her Jewish ancestry and religious affiliation

8   and because she was holding a sign stating "Israel wants Peace."

9       Jessica's assailant, Husam Zakharia, also a UC Berkeley student, was the leader of

10  "Students For Justice in Palestine" ("SJP") which is a UC Berkeley Registered Student

11  Organization ("RSO"). As alleged more fully below, SJP and Zakharia have been involved in

12  other incidents on campus to incite violence against and intimidate Jewish and other students.

13  Defendants knew of this history of incitement and intimidation, yet took no reasonable step to

14  adequately control Zakharia or other student members of the SJP.

15      The SJP conspires and coordinates with another UC Berkeley RSO, the Muslim Student

16  Organization ("MSA") (also known as the "Muslim Students Union"). As alleged more fully

17  below, the MSA has a publicly documented history of affiliation with and support of

18  organizations deemed "terror organizations" by the United States Department of State. Most

19  recently the District Attorney in Orange County, California, indicted eleven students from those

20  groups, for inciting and disrupting a speech given by Israeli Ambassador Michael Oren, at

21  University of California, Irvine.

22      As egregious as the March 5, 2010 attack against Jessica was, this case is about much

23  more than that assault. This case arises from defendants' tolerance of the development of a

24  dangerous anti-Semitic climate on its campuses, and their failure to adopt and implement

25  policies, regulations and student organizations procedures to prevent threats, intimidation and

26  harassment by the anti-Semitic/anti-Israel SJP, MSA and MSU, all of which that threatens and

27  endangers the health and safety of University of California's Jewish students.

28

---

CIVIL RIGHTS COMPLAINT FOR DAMAGES

1    One objective of this action is to ensure that defendants in the future effectively police,

2    discipline, and eliminate the incitement to violence, intimidation and harassment by RSO

3    Palestinian and Muslim activist groups, all of which make the UC Berkeley a dangerous and

4    threatening environment.

5                              **THE PARTIES**

6    This lawsuit for damages is brought by plaintiff Jessica Felber complaining against

7    defendants The Regents of the University of California, and its President, Mark G. Yudof, and

8    the University of California Berkeley, and its Chancellor, Robert J. Birgeneau, the Associated

9    Students University of California ("ASUC"), and the ASUC Auxiliary, as described below:

10    1.      Jurisdiction vests with this Court under 28 U.S.C.A. §1331, under the U.S.

11    Constitution, First Amendment and U.S. Constitution Fourteenth Amendment (Art. I U.S.

12    Constitution, Amendment XIV, U.S. Constitution), Title VI (42 U.S.C.A. §2000d), and under

13    42 U.S.C.A. §1983, and the doctrine of pendant jurisdiction.

14    2.      Venue in this case vests in the Northern District of California as all the acts and

15    omissions described herein took place on the campus of the University of California, Berkeley

16    and at the Offices of The Regents in Oakland, California.

17    3.      The plaintiff Jessica Felber at all times material to this action was a resident of

18    the County of Alameda, State of California, and a registered student of UC Berkeley.

19    4.      Defendant The Regents of the University of California ("The Regents") is

20    organized under the laws of the State of California, and entrusted with the responsibility of

21    providing public education to students including but not limited to college students whose ages

22    could range starting as early as 16 years old. The Regents of the University of California,

23    Berkeley, is also the recipient of federal funds as that term is defined under Title VI, 42

24    U.S.CA 2000.

25    5.      Although California Government Code §900, et seq., requires that notice of

26    certain claims against certain public entities be presented in specific ways, defendants The

27    Regents of the University of California ("Regents") and UC Berkeley are exempt from these

28    claims' filing provisions under California Government Code §905.6.  Notwithstanding §905.6,

---

-3-

CIVIL RIGHTS COMPLAINT FOR DAMAGES

Complaint_Felber_030311.doc
Case No.

1  plaintiff did timely file her notice of claims for relief against defendants.

2      6.     Defendant Mark Yudof, at all times material to this action, has served as

3  President of The Regents of the University of California.

4      7.     Defendant Robert J. Birgeneau, at all times material to this action, has served as

5  Chancellor of the University of California, Berkeley.

6      8.     At all relevant times, defendants The Regents of the University of California and

7  Mark Yudof and Robert J. Birgeneau have been and are now officers of the State of California.

8  Their actions described below constitute "state action" as that term has been defined by

9  relevant case law, and they acted under the color of state law, in doing the things alleged

10  herein.

11      9.     At all relevant times, defendant the University of California has been and is now

12  an agency of the state government vested with authority to control, manage and administer the

13  public facilities within the University of California, Berkeley, located within Alameda County.

14      10.    Defendant Associated Students University of California ("ASUC") is the student

15  governing body of the University of California.

16      11.    Defendant ASUC Auxiliary oversees the ASUC's budget and manages and

17  maintains the ASUC facilities.

18      12.    At all relevant times, defendants have been and are now empowered by the other

19  defendants to implement the policies that govern the conduct of persons affected and utilizing

20  the University of California, Berkeley, Irvine, San Diego, and other campuses.

21      13.    At all relevant times, each of the Defendants have been and are now the agent or

22  employee of the remaining Defendants and each was acting within the course and scope of such

23  agency or employment.

24      14.    Plaintiff Jessica Felber is a citizen of the United States and of Jewish ancestry

25  and religion, and at all times relevant herein was a students of UC Berkeley.  As alleged more

26  fully below, and at all times relevant hereto, she has peacefully and nonviolently tried to

27  exercise her constitutional rights to freedom of speech and freedom of assembly on the cause of

28  peace and reconciliation for the Jewish People and Land of Israel.

-4-

CIVIL RIGHTS COMPLAINT FOR DAMAGES

1

## STATEMENT OF FACTS

2      15.    Plaintiff Jessica Felber at age 17 was admitted and enrolled to the UC Berkeley.

3 At the time she enrolled plaintiff (like thousands of students in the University of California

4 system) was a minor, and UC Berkeley assumed the role of loco parenti for plaintiff.

5      16.    This case is more than one for assault and battery which caused physical and

6 emotional injury upon Jessica.  As will be described below, that assault was a product of

7 defendants' policies which (1) fostered and encouraged MSA and SJP campus terrorist

8 incitements; (2) turned a blind eye to the perpetrators of illegal activities; (3) failed to

9 effectively discipline the MSA and SJP for their pro-terrorist programs, goals and conduct;

10 despite having ample notice that such violence was foreseeable; (4) defendants failed to

11 provide adequate security to prevent the violence, harassment and intimidation which occurred

12 on March 5, 2010; and 5) thereby condoned and allowed the MSA, the SJP and MSU to

13 threaten, harass and intimidate Jewish students and to endanger their health and safety.

14

## THE ASSAULT

15      17.    On March 5, 2010, Jessica Felber and a group of other students were

16 participating in an event on campus called "Israel Peace and Diversity Week"—a series of

17 events sponsored by Tikvah, a sanctioned campus group.  As part of that event, Jessica was on

18 campus holding a placard that read "Israel wants Peace."  At that moment, another UC

19 Berkeley student, Husam Zakharia, who is a leader of UC Berkeley's RSO "Students for

20 Justice in Palestine" (SJP), intentionally rammed a shopping cart into Jessica, causing her

21 physical injury, for which she received medical attention.

22      18.    At the time of the assault, there was no adequate campus security present to

23 prevent the assailant, whose purpose in attacking Jessica was to vent his hostility toward the

24 non-violent message stated in her placard and her Jewish identity

25      19.    As a consequence of the violent assault, Jessica sought and obtained medical

26 treatment at the UCB Campus Urgent Medical care.  She also engaged legal counsel to obtain a

27 state court restraining order to keep Husam Zakharia away from her, even while on campus.

28

CIVIL RIGHTS COMPLAINT FOR DAMAGES

Complaint_Felber_030311.doc
Case No.

1  Alameda County Superior Court Commissioner Jon Huntsman, signed the permanent

2  restraining order to that effect on May 25, 2010.

3  **THE HARASSMENT, INTIMIDATION AND ASSAULT WERE**
   **ORCHESTRATED BY THE STUDENTS FOR JUSTICE IN**
4  **PALESTINE AND OTHER LIKE-MINDED STUDENT**
   **ORGANIZATIONS, INCLUDING THE MUSLIM STUDENT**
5  **ASSOCIATION AND MUSLIM STUDENT UNION**

6

7  **STUDENTS FOR JUSTICE IN PALESTINE (SJP)**

8      20.    The Students for Justice in Palestine (SJP) is a national student organization that

9  was founded at UC Berkeley in 2001.

10     21.    According to its mission statement, "SJP is a diverse group of students, faculty,

11 staff and community members, organized on democratic principles to promote justice, human

12 rights, liberation and self-determination for the Palestinian people." Its primary aim, however,

13 is to persuade academic institutions to divest their financial assets from companies that conduct

14 business with Israel, and to organize boycotts of Israeli goods and services, including academic

15 boycotts.

16     22.    Unlike the MSA, which is ostensibly a religious/cultural organization, the SJP is

17 overtly political; and it accounts for the majority of anti-Israel activism and anti-Semitic

18 posturing among students at the academies where there are chapters. At UC Berkeley the two

19 groups not only co-sponsor events and cooperate on strategic projects, but they even share the

20 same office and campus facilities. The more publicly activist SJP may be understood as the

21 militant arm of the outwardly benevolent MSA. Members of the former are often members of

22 the latter. The SJP at Berkeley receives less money from the ASUC than the MSA, perhaps

23 because it is classified as a political rather than a religious/cultural organization, yet the two

24 groups are linked together.

25     23.    The members of SJP have often employed aggressive tactics, and sometimes

26 commit acts of violence.

27

28

-6-

CIVIL RIGHTS COMPLAINT FOR DAMAGES

Complaint_Felber_030311.doc
Case No.

## FORMATION AND EARLY ACTIVITY OF SJP

24.    "Students for Justice in Palestine" first appeared in the Berkeley campus paper, The Daily Californian, on October 25, 2000, when it was described as "a coalition of campus groups." At that time the organization had not yet been registered with the Associated Students of the University of California (ASUC), although soon it would be. The coalition's leaders called for an international boycott of all Israeli products and an end to U.S. economic support of Israel.

25.    Four months later, the newly born SJP staged its first mock checkpoint protest. This Complaint will describe fully the campus checkpoints. On information and belief following the first checkpoint, the campus newspaper condemned the checkpoint of the demonstrators as violating the campus Code of Conduct by posting materials on university property without permission and interfering with university activity. "Checkpoint protest" will be described more fully herein.

26.    On April 24, 2001, thirty-two SJP demonstrators who called for cutting economic ties with Israel were arrested for obstructing access to Wheeler Hall during a six-hour siege. In violation of fire codes and other regulations, the SJP had chained closed nine of the twelve doors to the building and linked their arms to block the remaining entrances. Defendants provided no effective discipline against the SJP following this action.

27.    As will be described more fully herein, the SJP has been involved in numerous other violent, anti-Israel, anti-Semitic demonstrations on several campuses of the University of California System. Recently, SJP and MSA protestors were so disruptive at a speech given by the Israel Ambassador to the United Nations, Michael Oren, that the District Attorney in Orange County has brought conspiracy indictments against eleven students. As stated by the Orange County District Attorney on February 4, 2011, and reported in the Orange County Register, "...These defendants meant to stop this speech and to stop anyone else from hearing his ideas."

CIVIL RIGHTS COMPLAINT FOR DAMAGES

Complaint_Felber_030311.doc
Case No.

**THE NATIONAL MUSLIM STUDENTS ASSOCIATION (MSA)**

28.    The Muslim Students Association (MSA) was created in January 1963 at the University of Illinois Urbana-Champaign. According to its Constitution, its aims and purposes are "to serve the best interest of Islam and Muslims in the United States and Canada so as to enable them to practice Islam as a complete way of life."

**THE MSA AT UNIVERSITY OF CALIFORNIA, BERKELEY**

29.    The Muslim Students Association of the United States and Canada is divided into five geographical zones. It maintains a website that lists 148 separate MSA "Councils and Chapters" at high schools, colleges and universities in the western third of the United States, including UC Berkeley.

30.    Founded during the 1986-87 academic year, the Muslim Students Association (MSA) of UC Berkeley, which is also known as the Muslim Student Union (MSU), has become one of the largest and most active chapters in North America. Ostensibly its mission is to support those who wish to understand, appreciate, and practice their Islam without compromising their morals and beliefs; to educate non-Muslims about the misconceptions regarding Islam and the Islamic way of life; and to foster a social community for Muslims.

31.    The MSA is a funded organization on campus, and received $9,040.14 from the Associated Students of the University of California-Berkeley (ASUC) for the 2008-09 academic year. The group received $8,500 for 2006-07, $7,840.35 for 2005-06, and $8,250 for 2004-05. The MSA publication Al-Bayan, founded in 2000, was allocated $1,225 in 2008-09, $1,255 in 2006-07, and $935 in 2004-05. These sums are supplemented by monies that are raised from fundraising events, or allocated from MSA National. Student groups that are political in nature, receive less money than religious or cultural associations. The political activities of the MSA, outlined below, have not negatively affected its public funding allocation.

32.    In recent years, the MSA at UC Berkeley does not merely promote social networking, encourage observance of Islam, and plan religious, cultural and charitable events; it engages in political activism and mobilizes Muslims, both on and off campus, for activist

1  projects. The Constitution of the Muslim Student Union of Berkeley states one objective is to

2  "develop activism of Muslims on campus and in the community." The chapter has its own

3  Political Action Committee. Significantly, a sub-section of the National MSA manual entitled

4  "Political/Campus Action" urges members to "consider forming committees for certain issues

5  that need to be addressed on the campus or larger level. Those issues often are directed solely

6  at anti-Israel causes.

### MSA CONNECTIONS TO ISLAMIST ORGANIZATIONS
### AND THE RADICAL LEFT

9    33.    The Muslim Students Association has supported the Holy Land Foundation for

10  Relief and Development, five of whose leaders were convicted in 2007 on 108 separate charges

11  after an investigation lasting over fifteen years determined that the organization funneled more

12  than twelve million dollars to Hamas, a terrorist organization.

13    34.    The MSA is an active member of the steering committee of the Marxist-

14  Leninist association "International ANSWER." The MSA has had a considerable presence at

15  ANSWER-sponsored protests and activities.

16    35.    The relationship between the SJP, MSA and MSU, and their common goals and

17  tactics were well known to defendants at all times relevant herein.

### DEFENDANTS WERE ON NOTICE THAT MEMBERS OF THE
### SJP AND MSA POSED THREATS ON CAMPUS

20    36.    The March 5, 2010 assault against Jessica was not the first time that Husam

21  Zakharia and others from SJP acted violently against Jewish students. Physical intimidation and

22  violence were frequently employed as a tactic by SJP and other campus groups in an effort to

23  silence students on campus who support Israel. In addition, as will be alleged herein, the

24  University has consistently failed to discipline and effectively condemn SJP and its affiliate

25  RSO, the Muslim Student Association.

26    37.    Moreover, defendants had ample notice of harassment, intimidation, incitement

27  and violence committed by the SJP and MSA against Jewish students at defendant UC

28  Berkeley, Irvine, and San Diego campuses. Such incidents continue to the present.

-9-

CIVIL RIGHTS COMPLAINT FOR DAMAGES

Complaint_Felber_030311.doc
Case No.

## PRIOR TERRORIST ACTS BY SJP AND MSA
## AGAINST UNIVERSITY OF CALIFORNIA STUDENTS

### University of California—Berkeley Campus

38.    At the UC Berkeley campus, the SJP and MSA have at several times staged an armed "checkpoint" **which are pictured in Exhibit A, attached hereto,** flaunting and brandishing assault weapons.  Plaintiff Jessica Felber's assailant Husam Zakharia is pictured at the checkpoint talking to UC Campus Police on May 7, 2008.  At the checkpoint UC Berkeley students are confronted and demanded to state their religious affiliation, specifically if they are Jewish.  Although many students have complained to defendants, the defendants have done nothing to prevent the continuance of these hostile "checkpoints."

39.    On information and belief in or about November 2008, the SJP and MSA lead by Zakharia disrupted a concert organized by a campus Jewish group on the UCB campus. Zakharia assaulted a Jewish UCB student.  Zakharia and two other SJP activists were cited for battery by UC Campus Police.  However, defendants failed to effectively discipline SJP or Zakharia, such that UCB's actions allowed and encourage the SJP and MSA to continue and amplify their aggressive and violent threats, plans and activities. This incident was reported on publicly.

40.    On February 24, 1995, at the UCB campus, the MSA conducted a rally in support of Hamas, the Middle East extremist group, soon after a series of bus and sidewalk bombings in Israel. Students from several northern California campuses carried signs depicting an Israeli flag with a swastika in the middle and expressly volunteered to serve as future suicide bombers. A Jewish observer was spit on by one of the demonstrators. On information and belief, there was no effective condemnation by Defendants. This incident was reported on publicly.

### Prior Known Incidents

41.    On October 2000, the president of UCLA's MSA led a crowd of demonstrators at the Israeli consulate in chants of "Death to Israel!" and "Death to the Jews!"  This incident was reported on publicly.

-10-

CIVIL RIGHTS COMPLAINT FOR DAMAGES

Complaint_Felber_030311.doc
Case No.

42.    In December 2001, a member of Chabad, a Jewish religious group at UC Berkeley, was assaulted on campus near the Chabad house. During spring break of 2002, the Hillel window was smashed and graffiti stating, "Fuck the Jews," was painted on the building. This incident was reported on publicly.

43.    On May 14, 2002, at UC Irvine, an anti-Israel demonstration sponsored by the MSA and SJP featured the display of mock "body bags" of Palestinians claimed to have been "murdered" by the Israeli army." This incident was reported on publicly.

44.    On April 15, 2002, *Al-Talib*, the MSA/SJP Muslim newsmagazine at UCLA and Al Kalima, the Muslim newsmagazine at UC Irvine, jointly published a highly anti-Israel publication entitled "Zionism: the Forgotten Apartheid." The magazine publicly lauds and promotes both Hamas and Hizbullah as legitimate and noteworthy resistance movements. The magazine has also been distributed at UC San Diego." This incident was reported on publicly.

45.    Defendants, and each of them, established a course in the Fall of 2002, entitled "The Politics and Poetics of Palestinian Resistance" offered in the Department of English at Berkeley. According to the Fall 2002 course catalogue, Course # R1A, to be offered in the Department of English, was titled "The Politics and Poetics of Palestinian Resistance." An excerpt from the course description: "The brutal Israeli military occupation of Palestine, [ongoing] since 1948, has systematically displaced, killed, and maimed Palestinian people. And yet, from under the brutal weight of the occupation, Palestinians have produced their own culture and poetry of resistance. This class will examine the history of the [resistance] and the way that it is narrated by Palestinians in order to produce an understanding of the Intifada .... This class takes as its starting point the right of Palestinians to fight for their own self-determination. Conservative thinkers are encouraged to seek other sections." The class was to be taught by graduate student Snehal Shingavi, a leader of the SJP.

46.    On March 3, 2008, the SJP sponsored a "die-in" purportedly in response to Israel's decision to defend its citizenry against rockets that were launched into Israeli towns from Gaza. During the event, approximately 30 to 40 SJP student activists lay on the ground on Sproul Plaza, obstructing traffic and blocking the walkway. SJP activists held signs

Complaint_Felber_030311.doc
Case No.

accusing Israel of starting another Holocaust, and equating Israelis with Nazis. When the SJP

held anti-Israel rallies and events on the UC Berkeley campus, Jewish students peacefully

gathered and held up signs to counter the false and hateful messages that the SJP promotes

about Jews and Israel. The SJP has deliberately interfered with those rights, blocking the

Jewish students' signs and attempting to destroy them. The incident was reported on publicly.

47.    On November 13, 2008, at a UCB-approved student "hip-hop concert" at

Eshleman Hall on the UCB campus, as part of an Israel event, in violation of UCB ASUC

policy, SJP student activists deliberately disrupted that concert by draping two Palestinian flags

from the Eshleman Hall balcony directly over the stage and thus precipitated a riot needing

response from Campus Police. This incident was reported on publicly.

48.    Many Jewish and non-Jewish students have complained to UCB Dean of

Students Jonathan Poullard about the SJP's threatening and intimidating conduct, and about the

group's violations of UC Berkeley's Code of Student Conduct. Several Jewish students spoke

up at an ASUC senate meeting on March 3, 2008, at which Dean Poullard was present. Student

after student described being harassed and intimidated by members of the SJP. They described

the SJP's refusal to follow multiple requests by police and faculty to stop their intimidating

tactics. And they described how unsafe they felt on their own campus.

49.    UCB Dean Poullard acknowledged that those who violated Jewish students'

personal space and threatened their personal safety engaged in a Student Conduct violation.

These infractions have occurred repeatedly. To date, no effective disciplinary proceedings

against SJP have been taken, and the SJP and MSA aggressive and offensive conduct

continues. Defendant Yudof similarly declined to commit to minimum protections of Jewish

students against SJP and MSA harassment, at a recent November 10, 2010 conference at UC

Irvine. This incident was reported on publicly.

50.    However, Chancellor Birgeneau commented on the need to limit hate speech

which incites violence, following the assassination attempt of Congresswoman Giffords in

Tucson in January 2011. Chancellor Birgeneau and President Yudof apparently are not on the

same page in recognizing the need to limit hate speech on campus.

51.    In 2007, Egyptian-born author, Nonie Darwish spoke at UCB about her experiences growing up in Egypt and immigrating to the United States. The film "Obsession" (about the rise and dangers of radical Islam) was also screened.  During her speech she was repeatedly interrupted by the SJP student activists.  According to The Daily Californian, Ms. Darwish could not begin her speech for about a minute because of the heckling.  The student paper noted that university police had to escort several "loud opponents" out of the lecture hall at various points during the event. This incident was reported on publicly.

52.    SJP student activists staged another disruption when Middle East scholar, Dr. Daniel Pipes, was invited to speak at UC Berkeley in 2004.  Although signs were posted outside the lecture hall, warning that no banners, signs, shouting or violence would be permitted, SJP student activists violated these rules without any condemnation by the Defendants.  SJP student activists drowned out Dr. Pipes' speech several times, by chanting and jeering inflammatory slogans, including "Death to Zionism," "Zionism is racism," and "Israel out of Palestine."  The protestors screamed "Zionist Jew" and "racist" at Dr. Pipes, and "racist Jews" at the audience, chanted "Seig Heil" and gestured the Nazi salute.  The disruptions continued until the campus police finally had to eject many SJP student activists.

53.    Defendants had no known official response to the aforementioned disruptive conduct staged by the SJP.  This incident was reported on publicly.

**ADDITIONAL ACTIONS DEMONSTRATING A BLATANT HOSTILITY TOWARDS ISRAEL AND HER SUPPORTERS WHICH FUEL THE ATMOSPHERE OF HARASSMENT AND INTIMIDATION AT THE UNIVERSITY OF CALIFORNIA**

54.    On October 26, 2010, the "Muslim Identities and Cultures Working Group" of The Townsend Center for the Humanities, situated at UC Berkeley within the College of Letters and Sciences, was the co-sponsor of the event entitled "What Can American Academia Do to Realize Justice for Palestinians" (see, http://www.mecaforpeace.org/events/ berkeley-ca-what-can-american-academia-do-realize-justice-palestinians).  The focus of the event was to promote a boycott of Israeli academics and institutions as well as United States corporations which do business with Israel. The event was organized partially by the Students for Justice in

CIVIL RIGHTS COMPLAINT FOR DAMAGES

Complaint_Felber_030311.doc
Case No.

1  Palestine (SJP). The event's speakers: Lisa Taraki, Associate Professor at Bir Ziet University
2  and co-founder of the Palestinian Campaign for the Academic and Cultural Boycott of Israel,
3  and Hatem Bazian, a Lecturer at UC Berkeley. Co-sponsors were the Israel Divestment
4  Campaign, the U.S. Campaign for the Academic and Cultural Boycott of Israel, and the Middle
5  East Children's Alliance. These political organizations aggressively campaign against Israel
6  and Jewish American academics, scholars and students.

7      55.    Said political campaign is an infringement of academic freedom as described by
8  the American Association of University Professors. Said campaign is anti-Semitic according to
9  the Working Definition of Anti-Semitism of the European Monitoring Center on Racism and
10  Xenophobia as adopted by the U.S. State Department.

11              **A CHILLING REMINDER OF THE DARKEST CHAPTER OF HISTORY**

12      56.    The aforesaid conduct, acts and omissions of defendants, and each of them, to
13  tolerate and condone the aggressive and violent and threatening on-campus activities of the
14  MSA and SJP against plaintiff and other students of Jewish religion and ancestry is particularly
15  ominous because defendants' actions and omissions present a disturbing echo of incitement,
16  intimidation, harassment and violence carried out under the Nazi regime and those of its allies
17  in Europe against Jewish students and scholars in the leading universities of those countries
18  during the turbulent years leading up to and including the Holocaust.

19      57.    Plaintiff and other students of Jewish ancestry at defendants' campuses are
20  entitled to the highest levels of tolerance and respect for their religious beliefs, practices,
21  traditions and identity. However, due to the pattern and practices of defendants, and each of
22  them, to condone and allow the acts of aggressive MSA and SJP violence, confrontation and
23  harassment alleged herein, plaintiff and other Jewish students are despairing that the tragic
24  lessons of history have not yet been learned by these defendants, and each of them. Plaintiff
25  fears that the University of California campuses are no longer places of hope and dignity, of
26  academic and personal freedom, or of peaceful life and personal safety, and Plaintiff's rights as
27  outlined herein were violated.

28

---

-14-

CIVIL RIGHTS COMPLAINT FOR DAMAGES

Complaint_Felber_030311.doc
Case No.

| | |
|---|---|
| 1 | **FIRST CLAIM FOR RELIEF** |
| 2 | **(United States Constitution–Amendment I)** |
| 3 | 58.    The allegations set forth in paragraphs 1-57 inclusive are incorporated into this |
| 4 | cause of action by reference as if set forth in full. |
| 5 | 59.    Defendants' actions as described above have interfered with plaintiff's free |
| 6 | exercise of religion in violation of the United States Constitution in that, defendants' failure to |
| 7 | adequately secure and monitor the hostile campus environment prohibits plaintiff from the free |
| 8 | exercise of her religion. |
| 9 | 60.    Defendants' actions as described above interfered with plaintiff's free exercise |
| 10 | of religion in violation of the First Amendment to the United States Constitution, in that they |
| 11 | she is unable to express her views and religion. |
| 12 | WHEREFORE, plaintiff prays for relief as set forth below. |
| 13 | **SECOND CLAIM FOR RELIEF** |
| 14 | **(Violation of Cal. Const. art. I, § 4)** |
| 15 | 61.    The allegations set forth in paragraphs 1-60 inclusive are incorporated into this |
| 16 | cause of action by reference as if set forth in full. |
| 17 | 62.    Defendants' actions as described above interfered with plaintiff's free exercise |
| 18 | of religion in violation of Cal. Const. art. 1, § 4, in that plaintiff is unable to freely assert her |
| 19 | view. |
| 20 | WHEREFORE, plaintiff prays for relief as set forth below. |
| 21 | **THIRD CLAIM FOR RELIEF** |
| 22 | **(Violation of Federally Protected Rights under 42 U.S.C.§ 1983)** |
| 23 | 63.    The allegations set forth in paragraphs 1-63 inclusive are incorporated into this |
| 24 | cause of action by reference as if set forth in full. |
| 25 | 64.    Defendants, while acting under the color of state law, deprived plaintiff of her |
| 26 | right to freely exercise her Jewish religion and freedom of assembly, rights protected by |
| 27 | Federal law. |
| 28 | |

CIVIL RIGHTS COMPLAINT FOR DAMAGES

Complaint_Felber_030311.doc
Case No.

1    65.    Defendants' actions were intentional, and were based on a clearly expressed,

2    official policy of defendants that was designed to prevent individuals from freely practicing

3    their Jewish religion, and their freedom of assembly, based on their Jewish ancestry.

4    66.    As a direct and proximate cause of defendants' actions, plaintiff suffered

5    extreme embarrassment and humiliation, and emotional distress, accompanied by various

6    physical symptoms, including but not limited to sleeplessness, nervousness, and extreme

7    anxiety, as well as physical injury.  Plaintiff has also suffered damages in excess of the

8    minimum established for this court.  Plaintiff's damages are uncertain at this time, and plaintiff

9    will amend this Complaint to state damages with particularity once they are known.

10    WHEREFORE, plaintiff prays for relief as set forth below.

11    **FOURTH CLAIM FOR RELIEF**

12    **(Negligence and Premises Liability)**

13    67.    The allegations set forth in paragraphs 1-66 inclusive are incorporated into this

14    cause of action by reference as if set forth in full.

15    68.    Defendants and each of them owed a duty of care to Plaintiff including but not

16    limited to providing a safe place to study.  Defendants breached that duty proximately harming

17    Plaintiff in an amount to be proven at trial.

18    WHEREFORE, plaintiff prays for relief as set forth below.

19    **FIFTH CLAIM FOR RELIEF**

20    **(Violation of California Civil Code §§ 51, 51.5, 51.7, 52, 52.1)**

21    69.    The allegations set forth in paragraphs 1-68 inclusive are incorporated into this

22    cause of action by reference as if set forth in full.

23    70.    By defendants' aforesaid allowance of hostile forces to freely roam its

24    campuses, defendants have violated plaintiff's right to be free from discrimination and

25    retaliation as guaranteed by Civ. Code § 51.

26    71.    As a direct and proximate result of conduct of defendants, and each of them,

27    plaintiff suffered and will continue to suffer physical injuries, humiliation, and mental anguish.

28

-16-                                      Complaint_Felber_030311.doc
                                                         Case No.
CIVIL RIGHTS COMPLAINT FOR DAMAGES

72.    Defendants' violation of plaintiff's rights as guaranteed by Civ. Code § 51 entitles plaintiff to receive compensatory damages, reasonable attorney's fees, and injunctive relief, all of which are provided for in Civ. Code § 52 and are prayed for below.

73.    In doing the acts alleged in this Complaint, defendants knew or should have known that their actions and inactions were likely to allow the SJP, the MSA and MSU to continue to endanger the health and safety of University of California Jewish students. Plaintiff is informed and believes, and on that basis alleges, that defendants intended to cause injury to plaintiff and acted with a willful and conscious disregard of plaintiff's rights as secured by Civ. Code § 51, thereby entitling plaintiff to recover treble damages, or a minimum of $4,000, pursuant to Civ. Code § 52, subd. (a).

74.    Unless defendants are restrained by a preliminary and permanent injunction, Plaintiff will continue to suffer irreparable harm in that Plaintiff will continue to suffer injury. Plaintiff contemplates graduate studies at the University. Plaintiff has no adequate remedy at law because monetary damages, which may compensate for past violence or threats of violence, will not afford adequate relief for the fear, humiliation, and risk of injury that a continuation of defendants' conduct, in denial of plaintiff's rights, will cause.

WHEREFORE, plaintiff prays for relief as set forth below.

## SIXTH CLAIM FOR RELIEF

### (Violation of Title VI)

75.    The allegations set forth in paragraphs 1-74 inclusive are incorporated into this cause of action by reference as if set forth in full.

76.    Defendants have been deliberately indifferent to the complaints, words and actions of those directed against plaintiff in the general atmosphere created by the defendants.

WHEREFORE, plaintiff prays for relief as set forth below.

////

////

////

////

-17-

CIVIL RIGHTS COMPLAINT FOR DAMAGES

Complaint_Felber_030311.doc
Case No.

## SEVENTH CLAIM FOR RELIEF

### (Breach of fiduciary Duty)

77.    The allegations set forth in paragraphs 1-76 inclusive are incorporated into this cause of action by reference as if set forth in full.

78.    By accepting plaintiff to their institution while plaintiff was a minor, and by undertaking the instruction of plaintiff, defendants, and each of them, entered into a fiduciary relationship with the plaintiff.

79.    Defendants, and each of them, breached their fiduciary duty to plaintiff by engaging in the negligent and wrongful conduct described herein.

80.    As a direct result of defendants' breach of their fiduciary duty, plaintiff suffered and continues to suffer endangerment of her health and safety, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

## EIGHTH CLAIM FOR RELIEF

### (Violation of California Government Code Section 11135)

81.    The allegations set forth in paragraphs 1-80 inclusive are incorporated into this cause of action by reference as if set forth in full.

82.    Defendants' actions as described above interfered with Plaintiff's free exercise of religion in violation of Government Code Section 11135 in that Plaintiff is unable to freely assert her view.

////

////

////

////

////

-18-

CIVIL RIGHTS COMPLAINT FOR DAMAGES

Complaint_Felber_030311.doc
Case No.

1

**PRAYER**

2     WHEREFORE, plaintiff prays for judgment against defendants as follows:

3     1.     For general damages according to proof;

4     2.     For special damages according to proof;

5     3.     For treble damages pursuant to Civ. Code § 52, subd. (a);

6     4.     For reasonable attorney's fees, according to proof, pursuant to Civ. Code §52(a);

7     5.     For cost of suit;

8     6.     For an award of damages sufficient to compensate plaintiff for injuries suffered;

9     7.     For an award of costs, including attorney's fees pursuant to Code Civ. Proc.

10     §1021.5 and 42 U.S.C. §§ 1983 and 1988; and

11     8.     For such other and further relief as the Court finds proper.

    Respectfully submitted,

Dated: March 3, 2011

JOEL H. SIEGAL
Attorney for Plaintiff
JESSICA FELBER

-19-

CIVIL RIGHTS COMPLAINT FOR DAMAGES

Complaint_Felber_030311.doc
Case No.

1

## REQUEST FOR JURY TRIAL

2    Plaintiffs hereby request a trial by jury on all claims for relief.

3                                    Respectfully submitted,

4

5    Dated: March 3, 2011            _____

6                                    JOEL H. SIEGAL
                                     Attorney for Plaintiff
7                                    JESSICA FELBER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CIVIL RIGHTS COMPLAINT FOR DAMAGES            Complaint_Felber_030311.doc
                                                            Case No.