1  JOEL H. SIEGAL, ESQ. [SBN: 117044]
   Attorney at Law
2  703 Market Street, Suite 801
   San Francisco, CA 94103
3  Telephone:     (415) 777-5547
4  Facsimile:     (415) 777-5247
   Email:         joelsiegal@yahoo.com
5
6  NEAL M. SHER, ESQ. [New York Bar # 1092329]
   Attorney at Law
7  551 Fifth Avenue, 31st Floor
   New York, NY 10176
8  Telephone:     (646) 201-8841
   Email:         nealsher@gmail.com
9
10 Attorneys For Plaintiffs JESSICA FELBER and BRIAN MAISSY

11              UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
12                  SAN FRANCISCO DIVISION

13
   JESSICA FELBER                          Case No. CV 11-1012 RS
14 and BRIAN MAISSY
                                           **FIRST AMENDED CIVIL RIGHTS**
15              Plaintiffs,                 **COMPLAINT FOR DAMAGES,**
   vs.                                      **INJUNCTIVE AND DECLARATORY**
16                                          **RELIEF TO PREVENT CONTINUED**
   MARK G. YUDOF, PRESIDENT OF             **ENDANGERMENT OF HEALTH AND**
17 THE REGENTS OF THE UNIVERSITY           **SAFETY OF JEWISH UNIVERSITY OF**
   OF CALIFORNIA, BERKELEY, in his         **CALIFORNIA STUDENTS:**
18 individual capacity only as to damages,
   and in his official capacity as to injunctive   1)  United States Constitution–Amendment I
19 and declaratory relief; THE REGENTS     2)  42 U.S.C. Sections 1983 and 1985;
   OF THE UNIVERSITY OF                    3)  Title VI of the Civil Rights Act of 1964;
20 CALIFORNIA; ROBERT J.                   4)  Violations of Civil Code
   BIRGENEAU, CHANCELLOR OF THE                Sections 51, 51.5, 51.7, 52, 52.1;
21 UNIVERSITY OF CALIFORNIA,               5)  Violation of California Constitution
   BERKELEY, in his individual capacity,       Article 1, Sections 2, 4, 7;
22 as to damages, and in his official capacity  6)  Violation of California Government
   as to injunctive and declaratory relief;       Code Section 11135;
23 JONATHAN POULLARD, DEAN OF             7)  Injunctive and Declaratory Relief
   STUDENTS OF THE UNIVERSITY OF               to Compel Defendants to Affirmatively
24 CALIFORNIA, BERKELEY, in his               Monitor and Enjoin SJP and MSA
   individual capacity, as to damages, and in    to Stop Obstructive and Violent
25 his official capacity as to injunctive and    "Apartheid Week" Misconduct
   declaratory relief; ASSOCIATED
26 STUDENTS UNIVERSITY OF
   CALIFORNIA (ASUC),
27
                Defendants.
28

---

FIRST AMENDED COMPLAINT FOR DAMAGES, etc.

FAC_051111c
Case No. CV 11-1012 RS

# COMPLAINT

Plaintiffs JESSICA FELBER ("Jessica") and BRIAN MAISSY ("Brian") allege:

## INTRODUCTION

On March 5, 2010, Jessica Felber, a twenty year old Jewish student at the University of California, Berkeley ("UCB" or "UC Berkeley") was attacked and injured on defendant UC Berkeley's campus. Jessica's attack came in the middle of "Apartheid Week." Apartheid Week is a University of California, Berkeley, sanctioned and supported week sponsored with UC Berkeley Funds by Students for Justice in Palestine ("SJP"), and the Muslim Student Organization ("MSA") (also known as the "Muslim Students Union"). The purpose of "Apartheid Week" is to delegitimize the existence of the State of Israel in an effort to equate Israel with the system of government in place by South Africa between 1948 and 1993. While, parts of "Apartheid Week," for example informational tables and leaflet distribution are certainly protected free speech, certain actions in "Apartheid Week" such as the establishment of checkpoints where students brandish realistic-looking assault weapons, place barbed wire on campus walkways, and interrogate students as they pass, are neither protected-First Amendment speech, and as occurred here, and which occurred most recently on March 17, 2011, cause Jewish students to feel endangered, intimidated and harassed.

Jessica was assaulted on March 5, 2010, during "Apartheid Week" because of her Jewish ancestry and religious affiliation and because she was holding a sign stating "Israel wants Peace."

Jessica's assailant, Husam Zakharia, also a UC Berkeley student, was the leader of Students For Justice in Palestine which is a UC Berkeley Registered Student Organization. As alleged more fully below, SJP and Zakharia have been involved in other incidents on campus to incite violence against and intimidate Jewish and other students. Defendants knew of this history of incitement and intimidation, yet took no reasonable step to adequately control Zakharia or other student members of the SJP.

The SJP conspires and coordinates with another UC Berkeley RSO, the Muslim Student Organization (also known as the "Muslim Students Union"). As alleged more fully below, the

1 MSA has a publicly documented history of affiliation with and support of organizations

2 deemed "terror organizations" by the United States Department of State. Most recently the

3 District Attorney in Orange County, California, indicted eleven students from those groups, for

4 inciting and disrupting a speech given by Israeli Ambassador Michael Oren, at University of

5 California, Irvine.

6      Joining Jessica Felber in this case as a plaintiff is Brian Maissy, a third year EECS

7 undergraduate student at University of California, Berkeley, where the policies enacted by the

8 Regents, President, Chancellor, Dean of Students, and other Defendants, over the next several

9 years will play an important role in the exercise of Mr. Maissy's rights. Attached to this First

10 Amended Complaint as Exhibit A is a declaration by Brian Maissy describing events on

11 campus on March 17, 2011, which make him and other Jewish students feel endangered,

12 intimidated, and harassed.

13      As egregious as the March 5, 2010 attack against Jessica was, this case is about much

14 more than that assault. This case arises from defendants' tolerance of the development of a

15 dangerous anti-Semitic climate on its campuses, and their failure to adopt and implement

16 policies, regulations and student organizations procedures to prevent threats, intimidation and

17 harassment by the anti-Semitic/anti-Israel SJP, MSA and MSU, all of which that threatens and

18 endangers the health and safety of University of California's Jewish students.

19      One objective of this action is to ensure that defendants effectively police, discipline,

20 and eliminate the incitement to violence, intimidation and harassment by RSO Palestinian and

21 Muslim activist groups, all of which make the UC Berkeley a dangerous and threatening

22 environment. Each year, "Apartheid Week" with its checkpoints, students brandishing realistic-

23 looking assault weapons, barbed wire placed on heavily travelled campus walkways, and the

24 frenzy connected with it, make Jewish students feel particularly endangered, intimidated and

25 harassed.

26 ///

27 ////

28 ///

FIRST AMENDED COMPLAINT FOR DAMAGES, etc.

FAC_050911B
Case No. CV 11-1012 RS

## **THE PARTIES**

This lawsuit for damages, injunctive and declaratory relief is brought by plaintiffs Jessica Felber and Brian Maissy complaining against defendants The Regents of the University of California, and its President, Mark G. Yudof, and the University of California Berkeley, and its Chancellor, Robert J. Birgeneau, and Jonathan Poullard, Dean of Students, all individually as to claims for damages only and in their official capacity as to injunctive and declaratory relief; and the Associated Students University of California ("ASUC"), as described below:

1.     Jurisdiction vests with this Court under 28 U.S.C.A. §1331, under the U.S. Constitution, First Amendment and U.S. Constitution Fourteenth Amendment (Art. I U.S. Constitution, Amendment XIV, U.S. Constitution), Title VI (42 U.S.C.A. §2000d), and under 42 U.S.C.A. §1983, and the doctrine of pendant jurisdiction.

2.     Venue in this case vests in the Northern District of California as all the acts and omissions described herein took place on the campus of the University of California, Berkeley and at the Offices of The Regents in Oakland, California.

3.     The plaintiffs Jessica Felber and Brian Maissy at all times material to this action were residents of the County of Alameda, State of California, and registered students of UC Berkeley; plaintiff Brian Maissy is currently an EECS undergraduate student at UC Berkeley and on campus most weekdays.

4.     Defendant The Regents of the University of California ("The Regents") is organized under the laws of the State of California, and entrusted with the responsibility of providing public education to students including but not limited to college students whose ages could range starting as early as 16 years old. The Regents of the University of California, Berkeley, is also the recipient of federal funds as that term is defined under Title VI, 42 U.S.CA 2000.

5.     Although California Government Code §900, et seq., requires that notice of certain claims against certain public entities be presented in specific ways, defendants The Regents of the University of California ("Regents") and UC Berkeley are exempt from these

FIRST AMENDED COMPLAINT FOR DAMAGES, etc.

1   claims' filing provisions under California Government Code §905.6. Notwithstanding §905.6,

2   plaintiffs did timely file their notice of claims against defendants.

3       6.      Defendant Mark Yudof, at all times material to this action, has served as

4   President of The Regents of the University of California. Yudof is sued in his personal

5   capacity as to damages, and in his official capacity as to injunctive and declaratory relief.

6       7.      Defendant Robert J. Birgeneau, at all times material to this action, has served as

7   Chancellor of the University of California, Berkeley. Birgeneau is sued in his personal

8   capacity as to damages, and in his official capacity as to injunctive and declaratory relief.

9       8.      Defendant Jonathon Poullard, at all times material to this action, has served as

10  the Dean of Students. Poullard is sued in his personal capacity as to damages, and in his

11  official capacity as to injunctive and declaratory relief.

12      9.      At all relevant times, defendants The Regents of the University of California,

13  Mark Yudof, Robert J. Birgeneau, and Jonathon Poullard have been and are now officers of the

14  State of California. Their actions described below constitute "state action" as that term has

15  been defined by relevant case law, and they acted under the color of state law, in doing the

16  things alleged herein, as to the claims for injunctive and declaratory relief.

17      10.     At all relevant times, defendant the University of California has been and is now

18  an agency of the state government vested with authority to control, manage and administer the

19  public facilities within the University of California, Berkeley, located within Alameda County.

20      11.     Defendant Associated Students University of California ("ASUC") is the student

21  governing body of the University of California. ASUC maintains a website stating it is a

22  "RSO" (Registered Student Organization); one purpose of said website is to adequately provide

23  the campus community information about the RSO.

24      12.     At all relevant times, defendants have been and are now empowered by the other

25  defendants to implement the policies that govern the conduct of persons affected and utilizing

26  the University of California, Berkeley, Irvine, San Diego, and other campuses.

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES, etc.

FAC_050911B
Case No. CV 11-1012 RS

13.     At all relevant times, each of the Defendants have been and are now the agent or employee of the remaining Defendants and each was acting within the course and scope of such agency or employment.

14.     Plaintiffs have no plain, speedy or adequate remedy at law, and they are threatened by irreparable harm. For that reason, Plaintiffs seek injunctive and declaratory relief.

15.     Plaintiffs Jessica Felber and Brian Maissy are citizens of the United States and of Jewish ancestry and religion, and at all times relevant herein are students of UC Berkeley. Felber did graduate in December 2010. Maissy, however, is a third year EECS undergraduate student who is on the campus most weekdays. As alleged more fully below, and at all times relevant hereto, they have peacefully and nonviolently tried to exercise their constitutional rights to freedom of speech and freedom of assembly on the cause of peace and reconciliation for the Jewish People and Land of Israel.

## STATEMENT OF FACTS

16.     Plaintiffs Jessica Felber at age 17, and Brian Maissy at age 17, were admitted and enrolled to the UC Berkeley. At the time they enrolled plaintiffs (like thousands of students in the University of California system) were minors, and UC Berkeley assumed the role of loco parenti for plaintiffs.

17.     This case is more than one for assault and battery which caused physical and emotional injury upon Jessica. As will be described below, that assault was a product of defendants' policies which (1) fostered and encouraged MSA and SJP campus terrorist incitements; (2) turned a blind eye to the perpetrators of illegal activities; (3) failed to effectively discipline the MSA and SJP for their pro-terrorist programs, goals and conduct; despite having ample notice that such violence was foreseeable; (4) defendants failed to provide adequate security to prevent the violence, harassment and intimidation which occurred on March 5, 2010; and 5) thereby condoned and allowed the MSA, the SJP and MSU to threaten, harass and intimidate Jewish students and to endanger their health and safety. Even after the initial filing of this Complaint on March 4, 2011, and after numerous other complaints

1    and warnings about "Apartheid Week," Defendants and each of them, again sanctioned and

2    supported "Apartheid Week" in a manner that is more than the establishment of information

3    tables and distribution of leaflets. Rather, Defendants and each of them, sanctioned and

4    supported an RSO to brandish realistic-looking assault weapons on campus, placement of

5    barbed wire on campus walkways, and "interrogation" of students by rude, obnoxious

6    overbearing and violent tactics (see Declaration of Brian Maissy, Exhibit A).

### THE FELBER ASSAULTS

8        18.     On March 5, 2010, Jessica Felber and a group of other students were

9    participating in an event on campus called "Israel Peace and Diversity Week"—a series of

10   events sponsored by Tikvah, a sanctioned campus group; this event was an effort to peacefully

11   present viewpoints differing from "Apartheid Week." As part of that event, Jessica was on

12   campus holding a placard that read "Israel wants Peace." At that moment, another UC

13   Berkeley student, Husam Zakharia, who is a leader of UC Berkeley's RSO "Students for

14   Justice in Palestine" (SJP), intentionally rammed a shopping cart into Jessica, causing her

15   physical injury, for which she received medical attention. .

16       19.     At the time of the assault, there was no adequate campus security present to

17   prevent the assailant, whose purpose in attacking Jessica was to vent his hostility toward the

18   non-violent message stated in her placard and her Jewish identity

19       20.     As a consequence of the violent assault, Jessica sought and obtained medical

20   treatment at the UCB Campus Urgent Medical care. She also engaged legal counsel to obtain a

21   state court restraining order to keep Husam Zakharia away from her, even while on campus.

22   Alameda County Superior Court Commissioner Jon Huntsman, signed the permanent

23   restraining order to that effect on May 25, 2010; for the remainder of her time on campus,

24   Jessica was fearful to walk on campus alone.

25       21.     This was not the first time that Zakharia had assaulted Felber, and Felber had

26   brought to Defendants' attention. In or around January 2009, Zakharia spat at Felber during a

27   political rally and yelled "You are disgusting." Later that semester Defendant Poullard,

28   individually and as an agent of all other Defendants, decided he wanted to hold meetings with

both Tikvah and SJP about the conflict on campus. At Tikvah's meeting with Poullard, many students brought up instances about intimidation by SJP members. Felber spoke about being spat at by Zakharia. When relaying the story, Felber said "he spat at me." Poullard interrupted Felber and said "Wait wait wait, he spat AT you or On you?" Felber said "I didn't really know why that makes a difference but that yes, he spat AT me." Poullard responded saying "spitting At someone is very different from spitting ON someone. Spitting ON someone is a big deal. Go on with your story."

**THE HARASSMENT, INTIMIDATION AND ASSAULT WERE ORCHESTRATED BY THE STUDENTS FOR JUSTICE IN PALESTINE AND OTHER LIKE-MINDED STUDENT ORGANIZATIONS, INCLUDING THE MUSLIM STUDENT ASSOCIATION AND MUSLIM STUDENT UNION**

**STUDENTS FOR JUSTICE IN PALESTINE (SJP)**

22.     The Students for Justice in Palestine (SJP) is a national student organization that was founded at UC Berkeley in 2001.

23.     According to its mission statement, "SJP is a diverse group of students, faculty, staff and community members, organized on democratic principles to promote justice, human rights, liberation and self-determination for the Palestinian people." Its primary aim, however, is to persuade academic institutions to divest their financial assets from companies that conduct business with Israel, and to organize boycotts of Israeli goods and services, including academic boycotts.

24.     Unlike the MSA, which is ostensibly a religious/cultural organization, the SJP is overtly political; and it accounts for the majority of anti-Israel activism and anti-Semitic posturing among students at the academies where there are chapters. At UC Berkeley the two groups not only co-sponsor events and cooperate on strategic projects, but they even share the same office and campus facilities. The more publicly activist SJP may be understood as the militant arm of the outwardly benevolent MSA. Members of the former are often members of the latter. The SJP at Berkeley receives less money from the ASUC than the MSA, perhaps

1   because it is classified as a political rather than a religious/cultural organization, yet the two

2   groups are linked together.

3       25.     The members of SJP have often employed aggressive tactics, and sometimes

4   commit acts of violence. As described on SJP's Facebook page (the resolution of the plight of

5   the Palestinians): ". . . includes the full evacuation of Jewish occupants from all illegally held

6   Palestinian lands."

7                    **FORMATION AND EARLY ACTIVITY OF SJP**

8       26.     "Students for Justice in Palestine" first appeared in the Berkeley campus paper,

9   The Daily Californian, on October 25, 2000, when it was described as "a coalition of campus

10  groups." At that time the organization had not yet been registered with the Associated Students

11  of the University of California (ASUC), although soon it would be. The coalition's leaders

12  called for an international boycott of all Israeli products and an end to U.S. economic support

13  of Israel.

14      27.     Four months later, the newly born SJP staged its first mock checkpoint protest in

15  connection with "Apartheid Week." This Complaint will describe fully the campus

16  checkpoints. On information and belief following the first checkpoint, the campus newspaper

17  condemned the checkpoint of the demonstrators as violating the campus Code of Conduct by

18  posting materials on university property without permission and interfering with university

19  activity. However, checkpoint protests continue, with the most recent occurring on March 17,

20  2011, when a student in a wheelchair was accidentally entangled in the barbed wire (see

21  Declaration of Brian Maissy, Exhibit A, including email from Defendant Poullard .

22  "Checkpoint protest" will be described more fully herein. Also attached as various exhibits are

23  photos depicting "Apartheid Week" and campus checkpoints for several years leading up to the

24  most recent March 2011 events.

25      28.     On April 24, 2001, thirty-two SJP demonstrators who called for cutting

26  economic ties with Israel were arrested for obstructing access to Wheeler Hall during a six-hour

27  siege. In violation of fire codes and other regulations, the SJP had chained closed nine of the

28  twelve doors to the building and linked their arms to block the remaining entrances.

29.     As will be described more fully herein, the SJP has been involved in numerous other violent, anti-Israel, anti-Semitic demonstrations on several campuses of the University of California System. In January 2011, SJP and MSA protestors were so disruptive at a speech given by the Israel Ambassador, Michael Oren, that the District Attorney in Orange County has brought conspiracy indictments against eleven students. As stated by the Orange County District Attorney on February 4, 2011, and reported in the Orange County Register, "...These defendants meant to stop this speech and to stop anyone else from hearing his ideas."

## THE NATIONAL MUSLIM STUDENTS ASSOCIATION (MSA)

30.     The Muslim Students Association (MSA) was created in January 1963 at the University of Illinois Urbana-Champaign. According to its Constitution, its aims and purposes are "to serve the best interest of Islam and Muslims in the United States and Canada so as to enable them to practice Islam as a complete way of life." According to MSA's Facebook page, the initial leadership of the MSA, "came from Arabic-speaking members with the Muslim Brotherhood's help to establish the group. A Saudi Arabian charity, the Muslim World League, provided early funding for the group."

## THE MSA AT UNIVERSITY OF CALIFORNIA, BERKELEY

31.     The Muslim Students Association of the United States and Canada is divided into five geographical zones. It maintains a website that lists 148 separate MSA "Councils and Chapters" at high schools, colleges and universities in the western third of the United States, including UC Berkeley.

32.     Founded during the 1986-87 academic year, the Muslim Students Association (MSA) of UC Berkeley, which is also known as the Muslim Student Union (MSU), has become one of the largest and most active chapters in North America. Ostensibly its mission is to support those who wish to understand, appreciate, and practice their Islam without compromising their morals and beliefs; to educate non-Muslims about the misconceptions regarding Islam and the Islamic way of life; and to foster a social community for Muslims.

33.     The MSA is a funded organization on campus, and received $9,040.14 from the Associated Students of the University of California-Berkeley (ASUC) for the 2008-09

1  academic year. The group received $8,500 for 2006-07, $7,840.35 for 2005-06, and $8,250 for

2  2004-05. The MSA publication Al-Bayan, founded in 2000, was allocated $1,225 in 2008-09,

3  $1,255 in 2006-07, and $935 in 2004-05. These sums are supplemented by monies that are

4  raised from fundraising events, or allocated from MSA National. Student groups that are

5  political in nature, receive less money than religious or cultural associations. The political

6  activities of the MSA, outlined below, have not negatively affected its public funding

7  allocation.

8      34.    In recent years, the MSA at UC Berkeley does not merely promote social

9  networking, encourage observance of Islam, and plan religious, cultural and charitable events;

10  it engages in political activism and mobilizes Muslims, both on and off campus, for activist

11  projects. The Constitution of the Muslim Student Union of Berkeley states one objective is to

12  "develop activism of Muslims on campus and in the community." The chapter has its own

13  Political Action Committee. Significantly, a sub-section of the National MSA manual entitled

14  "Political/Campus Action" urges members to "consider forming committees for certain issues

15  that need to be addressed on the campus or larger level. The MSA on campus has been actively

16  involved in "Apartheid Week."

## MSA CONNECTIONS TO ISLAMIST ORGANIZATIONS
## AND THE RADICAL LEFT

19      35.    The Muslim Students Association has supported the Holy Land Foundation for

20  Relief and Development, five of whose leaders were convicted in 2007 on 108 separate charges

21  after an investigation lasting over fifteen years determined that the organization funneled more

22  than twelve million dollars to Hamas, a terrorist organization.

23      36.    The MSA is an active member of the steering committee of the Marxist-

24  Leninist association "International ANSWER." The MSA has had a considerable presence at

25  ANSWER-sponsored protests and activities.

26      37.    The relationship between the SJP, MSA and MSU, and their common goals and

27  tactics were well known to defendants at all times relevant herein, as is their involvement

28  yearly in "Apartheid Week."

## DEFENDANTS WERE ON NOTICE THAT MEMBERS OF THE
## SJP AND MSA POSED THREATS ON CAMPUS

38.     The March 5, 2010 assault against Jessica was not the first time that Husam Zakharia and others from SJP acted violently against Jewish students. Physical intimidation and violence were frequently employed as a tactic by SJP and other campus groups in an effort to silence students on campus who support Israel.  In addition, as will be alleged herein, the University has consistently failed to discipline and effectively condemn SJP and its affiliate RSO, the Muslim Student Association.  Each year the crescendo of SJP and MSA activity occurs in March during "Apartheid Week."  Indeed, Jessica's assault occurred during "Apartheid Week," and as the Declaration of Maissy makes clear, the subjective and objective fears of Jewish students heightens during "Apartheid Week."

39.     Moreover, defendants had ample notice of harassment, intimidation, incitement and violence committed by the SJP and MSA against Jewish students at defendant UC Berkeley, Irvine, and San Diego campuses.  Such incidents continue to the present.

## PRIOR TERRORIST ACTS BY SJP AND MSA
## AGAINST UNIVERSITY OF CALIFORNIA STUDENTS

### University of California—Berkeley Campus

40.     At the UC Berkeley campus, the SJP and MSA have at several times staged an armed "checkpoint" which are pictured in Exhibit B, attached hereto, flaunting and brandishing realistic-looking assault weapons.  Also attached are the following:  Exhibit C are photos of the March 17, 2011 checkpoint barbed wire and interrogations;  Exhibit D are photos of SJP and MSA demonstrators with coffins blocking campus walkways; Exhibit E are photos of the 2009 checkpoints; Exhibit F are photos of the 2010 checkpoints; Exhibit G are photos of the most recent 2011 checkpoint (referenced in the Declaration of Maissy); Exhibit H are photos of vandalized Jewish signs on campus.  Plaintiff Jessica Felber's assailant Husam Zakharia is pictured at the checkpoint talking to UC Campus Police on May 7, 2008 in Exhibit B.  At the checkpoint UC Berkeley students are confronted and demanded to state their religious affiliation, specifically if they are Jewish.  Although many students have complained to

-12-

1  defendants, the defendants have done nothing to prevent the continuance of these hostile

2  "checkpoints."

3      41.     On information and belief in or about November 2008, the SJP and MSA lead

4  by Zakharia disrupted a concert organized by a campus Jewish group on the UCB campus.

5  Zakharia assaulted a Jewish UCB student.  Zakharia and two other SJP activists were cited for

6  battery by UC Campus Police.  However, defendants failed to effectively discipline SJP or

7  Zakharia, such that UCB's actions allowed and encourage the SJP and MSA to continue and

8  amplify their aggressive and violent threats, plans and activities. This incident was reported on

9  publicly.

10     42.     On February 24, 1995, at the UCB campus, the MSA conducted a rally in

11 support of Hamas, the Middle East extremist group, soon after a series of bus and sidewalk

12 bombings in Israel. Students from several northern California campuses carried signs depicting

13 an Israeli flag with a swastika in the middle and expressly volunteered to serve as future suicide

14 bombers. A Jewish observer was spit on by one of the demonstrators. On information and

15 belief, there was no effective condemnation by Defendants. This incident was reported on

16 publicly.

17                              **Prior Known Incidents**

18     43.     On October 2000, the president of UCLA's MSA led a crowd of demonstrators

19 at the Israeli consulate in chants of "Death to Israel!" and "Death to the Jews!"  This incident

20 was reported on publicly.

21     44.     In December 2001, a member of Chabad, a Jewish religious group at UC

22 Berkeley, was assaulted on campus near the Chabad house.  During spring break of 2002, the

23 Hillel window was smashed and graffiti stating, "Fuck the Jews," was painted on the building.

24 This incident was reported on publicly.

25     45.     On May 14, 2002, at UC Irvine, an anti-Israel demonstration sponsored by the

26 MSA and SJP featured the display of mock "body bags" of Palestinians claimed to have been

27 "murdered" by the Israeli army." This incident was reported on publicly.

28

46. On April 15, 2002, *Al-Talib*, the MSA/SJP Muslim newsmagazine at UCLA and Al Kalima, the Muslim newsmagazine at UC Irvine, jointly published a highly anti-Israel publication entitled "Zionism: the Forgotten Apartheid." The magazine publicly lauds and promotes both Hamas and Hizbullah as legitimate and noteworthy resistance movements. The magazine has also been distributed at UC San Diego." This incident was reported on publicly.

47. Defendants, and each of them, established a course in the Fall of 2002, entitled "The Politics and Poetics of Palestinian Resistance" offered in the Department of English: According to the Fall 2002 course catalogue, Course # R1A, to be offered in the Department of English, was titled "The Politics and Poetics of Palestinian Resistance." An excerpt from the course description: "The brutal Israeli military occupation of Palestine, [ongoing] since 1948, has systematically displaced, killed, and maimed Palestinian people. And yet, from under the brutal weight of the occupation, Palestinians have produced their own culture and poetry of resistance. This class will examine the history of the [resistance] and the way that it is narrated by Palestinians in order to produce an understanding of the Intifada .... This class takes as its starting point the right of Palestinians to fight for their own self-determination. Conservative thinkers are encouraged to seek other sections." The class was to be taught by graduate student Snehal Shingavi, a leader of the SJP.

48. On March 3, 2008, the SJP sponsored a "die-in" purportedly in response to Israel's decision to defend its citizenry against rockets that were launched into Israeli towns from Gaza. During the event, approximately 30 to 40 SJP student activists lay on the ground on Sproul Plaza, obstructing traffic and blocking the walkway. SJP activists held signs accusing Israel of starting another Holocaust, and equating Israelis with Nazis. When the SJP held anti-Israel rallies and events on the UC Berkeley campus, Jewish students peacefully gathered and held up signs to counter the false and hateful messages that the SJP promotes about Jews and Israel. The SJP has deliberately interfered with those rights, blocking the Jewish students' signs and attempting to destroy them. The incident was reported on publicly.

49. On November 13, 2008, at a UCB-approved student "hip-hop concert" at Eshleman Hall on the UCB campus, as part of an Israel event, in violation of UCB ASUC

FIRST AMENDED COMPLAINT FOR DAMAGES, etc.

FAC_050911B
Case No. CV 11-1012 RS

1 | policy, SJP student activists deliberately disrupted that concert by draping two Palestinian flags
2 | from the Eshleman Hall balcony directly over the stage and thus precipitated a riot needing
3 | response from Campus Police. ." This incident was reported on publicly.

4 |      50.     Many Jewish and non-Jewish students have complained to UCB Dean of
5 | Students Jonathan Poullard about the SJP's threatening and intimidating conduct, and about the
6 | group's violations of UC Berkeley's Code of Student Conduct. Several Jewish students spoke
7 | up at an ASUC senate meeting on March 3, 2008, at which Dean Poullard was present. Student
8 | after student described being harassed and intimidated by members of the SJP. They described
9 | the SJP's refusal to follow multiple requests by police and faculty to stop their intimidating
10 | tactics. And they described how unsafe they felt on their own campus.

11 |      51.     UCB Dean Poullard acknowledged that those who violated Jewish students'
12 | personal space and threatened their personal safety engaged in a Student Conduct violation.
13 | These infractions have occurred repeatedly. To date, no effective disciplinary proceedings
14 | against SJP have been taken, and the SJP and MSA aggressive and offensive conduct
15 | continues. Indeed, as evidenced by the Declaration of Maissy, as of March 17, 2011,
16 | checkpoints on campus with barbed wire and realistic-looking assault weapons continue; and a
17 | student in a wheelchair became accidentally entangled in the barbed wire without apparent
18 | appropriate concern from the Administration. Defendant Yudof similarly declined to commit to
19 | minimum protections of Jewish students against SJP and MSA harassment, at a recent
20 | November 10, 2010 conference at UC Irvine. This incident was reported on publicly.

21 |      52.     However, Chancellor Birgeneau commented on the need to limit hate speech
22 | which incites violence following the assassination attempt of Congresswoman Giffords in
23 | Tucson in January 2011. Yet each year on campus, with the checkpoints which are an integral
24 | part of "Apartheid Week," the campus and Administration condones hate speech which
25 | endangers the health and safety of Jewish students.

26 |      53.     In 2007, Egyptian-born author, Nonie Darwishspoke at UCB about her
27 | experiences growing up in Egypt and immigrating to the United States. The film "Obsession"
28 | (about the rise and dangers of radical Islam) was also screened. During her speech she was

1  repeatedly interrupted by the SJP student activists. According to The Daily Californian, Ms.

2  Darwish could not begin her speech for about a minute because of the heckling. The student

3  paper noted that university police had to escort several "loud opponents" out of the lecture hall

4  at various points during the event. This incident was reported on publicly.

5       54.    SJP student activists staged another disruption when Middle East scholar,

6  Dr. Daniel Pipes, was invited to speak at UC Berkeley in 2004. Although signs were posted

7  outside the lecture hall, warning that no banners, signs, shouting or violence would be

8  permitted, SJP student activists violated these rules without any condemnation by the

9  Defendants. SJP student activists drowned out Dr. Pipes' speech several times, by chanting

10  and jeering inflammatory slogans, including "Death to Zionism," "Zionism is racism," and

11  "Israel out of Palestine." The protestors screamed "Zionist Jew" and "racist" at Dr. Pipes, and

12  "racist Jews" at the audience, chanted "Seig Heil" and gestured the Nazi salute. The

13  disruptions continued until the campus police finally had to eject many SJP student activists.

14       55.      Defendants had no known official response to the aforementioned disruptive

15  conduct staged by the SJP. This incident was reported on publicly.

16  **ADDITIONAL ACTIONS DEMONSTRATING A BLATANT**
**HOSTILITY TOWARDS ISRAEL AND HER SUPPORTERS**
17  **WHICH FUEL THE ATMOSPHERE OF HARASSMENT AND**
**INTIMIDATION AT THE UNIVERSITY OF CALIFORNIA**
18

19       56.      On October 26, 2010, the "Muslim Identities and Cultures Working Group" of

20  The Townsend Center for the Humanities, situated at UC Berkeley within the College of

21  Letters and Sciences, was the co-sponsor of the event entitled "What Can American Academia

22  Do to Realize Justice for Palestinians" (see, http://www.mecaforpeace.org/events/ berkeley-ca-

23  what-can-american-academia-do-realize-justice-palestinians). The focus of the event was to

24  promote a boycott Israeli academics and institutions as well as United States corporations

25  which do business with Israel. The event was organized partially by the Students for Justice in

26  Palestine (SJP). The event's speakers: Lisa Taraki, Associate Professor at Bir Ziet University

27  and co-founder of the Palestinian Campaign for the Academic and Cultural Boycott of Israel,

28  and Hatem Bazian, a Lecturer at UC Berkeley. Co-sponsors were the Israel Divestment

Campaign, the U.S. Campaign for the Academic and Cultural Boycott of Israel, and the Middle East Children's Alliance. These political organizations aggressively campaign against Israel and Jewish American academics, scholars and students. These academic programs, viewed in combination with the yearly sanctioned and supported checkpoints as part of "Apartheid Week," create an environment where Jewish students feel endangered.

57.    Said political campaign is an infringement of academic freedom as described by the American Association of University Professors. Said campaign is anti-Semitic according to the Working Definition of Anti-Semitism of the European Monitoring Center on Racism and Xenophobia as adopted by the U.S. State Department.

## THE CHECKPOINTS AS THE CENTERPIECE OF "APARTHEID WEEK"

58.    In an effort to attempt to delegitimize the right of the State of Israel to exist, two RSO's, the SJP and MSA, have yearly promulgated "Apartheid Week."

59.    Plaintiffs herein acknowledge that it would be "chutzpah" (a Yiddish word which has found common usage in English, meaning roughly "gall") to attempt to use the judicial system to deny any group of its First Amendment rights. Plaintiffs respect all of their fellow University students' legitimate First Amendment rights of expression. Indeed, Ms. Felber was expressing her First Amendment rights when she was assaulted. Plaintiffs acknowledge that any campus group should have full access to set up informational tables, distribute leaflets, and to speak on campus. The history of Berkeley, the founding spot of the campus-free speech movement, so mandates as does the first Amendment. However, Defendants' condoning the establishment of "checkpoints," where students dress as soldiers, carry realistic-looking assault weapons, lay barbed wire on heavily travelled campus walkways, and interrogate others about their religious affiliation and national origins, goes beyond free speech protection. It is terrifying, especially to 17 year old students, and it endangers the health and safety of Jewish students. Indeed it violates California Penal Code §12556, and Berkeley Campus Regulations Implementing University Policy sections 211, 312, and 321.

## A CHILLING REMINDER OF THE DARKEST CHAPTER OF HISTORY

60.     The aforesaid conduct, acts and omissions of defendants, and each of them, to tolerate and condone the aggressive and violent and threatening on-campus activities of the MSA and SJP against plaintiffs and other students of Jewish religion and ancestry is particularly ominous because defendants' actions and omissions present a disturbing echo of incitement, intimidation, harassment and violence carried out under the Nazi regime and those of its allies in Europe against Jewish students and scholars in the leading universities of those countries during the turbulent years leading up to and including the Holocaust..

61.     Plaintiffs and other students of Jewish ancestry at defendants' campuses are entitled to the highest levels of tolerance and respect for their religious beliefs, practices, traditions and identity,. However, due to the pattern and practices of defendants, and each of them, to condone and allow the acts of aggressive MSA and SJP violence, confrontation and harassment alleged herein, plaintiffs and other Jewish students are despairing that the tragic lessons of history have not yet been learned by these defendants, and each of them. Plaintiffs fear that the University of California campuses are no longer places of hope and dignity, of academic and personal freedom, or of peaceful life and personal safety.

### FIRST CLAIM FOR RELIEF

### (United States Constitution–Amendment I)

62.     The allegations set forth in paragraphs 1-61 inclusive are incorporated into this cause of action by reference as if set forth in full.

63.     Defendants' actions as described above have interfered with plaintiffs' free exercise of religion in violation of the United States Constitution in that, defendants' failure to adequately secure and monitor the hostile campus environment prohibits plaintiffs from the free exercise of their religion.

64.     Defendants' actions as described above interfered with plaintiffs' free exercise of religion in violation of the First Amendment to the United States Constitution, in that they are is unable to express their views and religion. If defendants are not restrained and enjoined from their course of conduct, the interference will continue indefinitely. Defendants must not

1 │ allow checkpoints, realistic-looking assault weapons, barbed wire and other blockage of

2 │ campus walkways, and must not allow students to interrogate others about their race, religious

3 │ affiliation and national origins, during or as part of the "Apartheid Week" activities.

4 │     WHEREFORE, plaintiffs prays for relief as set forth below.

5 │ **SECOND CLAIM FOR RELIEF**

6 │ **(Violation of Cal. Const. art. I, § 4)**

7 │     65.    The allegations set forth in paragraphs 1-64 inclusive are incorporated into this

8 │ cause of action by reference as if set forth in full.

9 │     66.    Defendants' actions as described above interfered with plaintiffs' free exercise

10 │ of religion in violation of Cal. Const. art. I, § 4, in that plaintiffs are unable to freely assert their

11 │ view.

12 │     67.    If defendants are not restrained and enjoined from their course of conduct, the

13 │ interference will continue indefinitely. Defendants must not allow checkpoints, realistic-

14 │ looking assault weapons, barbed wire and other blockage of campus walkways, and must not

15 │ allow students to interrogate others about their race, religious affiliation and national origins,

16 │ during or as part of the "Apartheid Week" activities.

17 │     WHEREFORE, plaintiffs prays for relief as set forth below.

18 │ **THIRD CLAIM FOR RELIEF**

19 │ **(Violation of Federally Protected Rights under 42 U.S.C.§ 1983)**
**Against Defendants Individually**

20 │

21 │     68.    The allegations set forth in paragraphs 1-67 inclusive are incorporated into this

22 │ cause of action by reference as if set forth in full.

23 │     69.    Defendants, while acting under the color of state law, deprived plaintiffs of their

24 │ right to freely exercise their Jewish religion and their freedom of assembly, rights protected by

25 │ Federal law.

26 │     70.    Defendants' actions were intentional, and were based on a clearly expressed,

27 │ official policy of defendants that was designed to prevent individuals from freely practicing

28 │ their Jewish religion, and their freedom of assembly, based on their Jewish ancestry.

71.     As a direct and proximate cause of defendants' actions, plaintiffs have suffered extreme embarrassment and humiliation, and emotional distress, accompanied by various physical symptoms, including but not limited to sleeplessness, nervousness, and extreme anxiety, as well as physical injury.  Plaintiffs have also suffered damages in excess of the minimum established for this court.  Plaintiffs' damages are uncertain at this time, and plaintiffs will amend this Complaint to state their damages with particularity once they are known.

WHEREFORE, plaintiffs pray for relief as set forth below.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief)

72.     The allegations set forth in paragraphs 1-71 inclusive are incorporated into this cause of action by reference as if set forth in full.

73.     An actual controversy now exists between the parties, in that plaintiffs contend that defendants' actions violate their right to freely exercise their religion, which is protected by the U.S. Constitution Amendment I and by California Constitution Article I, §4; and that the actions on campus in allowing the conduct described herein creates continued endangerment to the health and safety of Jewish students.

WHEREFORE, plaintiffs pray for relief as set forth below.

## FIFTH CLAIM FOR RELIEF

### (Violation of California Civil Code §§ 51, 51.5, 51.7, 52, 52.1)

### Against Defendants Individually for Money and Damages and as Against All Defendants In Their Official Capacities for Prospective Relief

74.     The allegations set forth in paragraphs 1-73 inclusive are incorporated into this cause of action by reference as if set forth in full.

75.     By defendants' aforesaid allowance of hostile forces to freely roam its campuses, defendants have violated plaintiffs' right to be free from discrimination and retaliation as guaranteed by Civ. Code § 51.

---

-20-

FIRST AMENDED COMPLAINT FOR DAMAGES, etc.

76.     As a direct and proximate result of conduct of defendants, and each of them, plaintiffs have suffered and will continue to suffer physical injuries, humiliation, and mental anguish.

77.     Defendants' violation of plaintiffs' rights as guaranteed by Civ. Code § 51 entitles plaintiffs to receive compensatory damages, reasonable attorney's fees, and injunctive relief, all of which are provided for in Civ. Code § 52 and are prayed for below.

78.     In doing the acts alleged in this Complaint, defendants knew or should have known that their actions and inactions were likely to allow the SJP, the MSA and MSU to continue to endanger the health and safety of University of California Jewish students. Plaintiffs are informed and believe, and on that basis allege, that defendants intended to cause injury to plaintiffs and acted with a willful and conscious disregard of plaintiffs' rights as secured by Civ. Code § 51, thereby entitling plaintiffs to recover treble damages, or a minimum of $4,000, pursuant to Civ. Code § 52, subd. (a).

79.     Unless defendants are restrained by a preliminary and permanent injunction, plaintiffs will continue to suffer irreparable harm in that Plaintiff will continue to suffer injury. Plaintiffs contemplate graduate studies at the University. Plaintiffs have no adequate remedy at law because monetary damages, which may compensate for past violence or threats of violence, will not afford adequate relief for the fear, humiliation, and risk of injury that a continuation of defendants' conduct, in denial of plaintiffs' rights, will cause.

WHEREFORE, plaintiffs pray for relief as set forth below.

## SIXTH CLAIM FOR RELIEF

### (Violation of Title VI)

80.     The allegations set forth in paragraphs 1-79 inclusive are incorporated into this cause of action by reference as if set forth in full.

81.     Defendants have been deliberately indifferent to the complaints, words and actions of those directed against plaintiffs in the general atmosphere created by the defendants.

WHEREFORE, plaintiffs pray for relief as set forth below.

-21-

FIRST AMENDED COMPLAINT FOR DAMAGES, etc.          FAC_050911B
Case No. CV 11-1012 RS

## SEVENTH CLAIM FOR RELIEF

### (Injunctive and Declaratory Relief; Government Code § 11135)

82.     The allegations set forth in paragraphs 1-81 inclusive are incorporated into this cause of action by reference as if set forth in full.

83.     The actions of defendants as alleged above violate Gov. Code § 11135 because defendants are depriving plaintiffs, solely because of their Jewish religion and ancestry, of full access to the facilities of the University of California, Berkeley, allow the SJP, the MSA and MSU to continue to endanger the health and safety of University of California Jewish students. Defendants should be ordered from allowing obstructive and violent "Apartheid Week" checkpoints and should be enjoined from allowing obstructive and violent "Apartheid Week" checkpoints, brandishing realistic-looking assault weapons, barbed wire and other blockage of campus walkways, and must not allow students to challenge and interrogate other students about their race, religious affiliation and national origins, during or as part of the "Apartheid Week" activities.

WHEREFORE, plaintiffs pray for relief as set forth below.

### PRAYER

WHEREFORE, plaintiffs pray for judgment against defendants as follows:

1.     For general damages according to proof, as to individual Defendants;

2.     For special damages according to proof, as to individual Defendants;

3.     For treble damages pursuant to Civ. Code § 52, subd. (a), as to individual Defendants;

4.     For reasonable attorney's fees, according to proof, pursuant to Civ. Code § 52, subd.(a), and 42 USC 1983.;

5.     For a preliminary injunction against defendants, and each of them, enjoining defendants from financially supporting groups such as SJP and MSA; until there is in place accurate descriptions on the ASUC website describing its political activities;

6.    For a permanent injunction against defendants, and each of them, enjoining defendants from allowing threats, intimidation and harassment by the SJP, the MSA and MSU which endanger the health and safety of University of California Jewish students, including not allowing checkpoints, realistic-looking asault weapons, barbed wire and other blockage of campus walkways, and must not allowing students to interrogate others about their race, religious affiliation and national origins, during or as part of the "Apartheid Week" activities;

7.    For cost of suit;

8.    For a declaration of rights, declaring that defendants extensively regulate such groups as SJP and MSA during "Apartheid Week," so that there is no threat or endangerment to the health and safety of students as has occurred at the "checkpoints," as outlined herein;

9.    For an award of damages sufficient to compensate plaintiffs for injuries suffered;

10.    For an award of costs, including attorney's fees pursuant to Code Civ. Proc. §1021.5 and 42 U.S.C. §§ 1983 and 1988; and

11.    For such other and further relief as the Court finds proper.

Respectfully submitted,

Dated: May 18, 2011

JOEL H. SIEGAL
Attorney for Plaintiffs
JESSICA FELBER; BRIAN MAISSY

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims for relief.

Respectfully submitted,

Dated: May 18, 2011

JOEL H. SIEGAL
Attorney for Plaintiffs
JESSICA FELBER; BRIAN MAISSY

-23-

# EXHIBIT "A"

**Maissy Declaration and E-mails**

JOEL H. SIEGAL, ESQ. [SBN: 117044]
Attorney at Law
703 Market Street, Suite 801
San Francisco, CA 94103
Telephone:    (415) 777-5547
Facsimile:    (415) 777-5247
Email:        joelsiegal@yahoo.com

NEAL M. SHER, ESQ. [New York Bar # 1092329]
Attorney at Law
551 Fifth Avenue, 31st Floor
New York, NY 10176
Telephone:    (626) 201-8841
Email:        nealsher@gmail.com

Attorneys For Plaintiffs JESSICA FELBER; BRIAN MAISSY

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JESSICA FELBER, and BRIAN MAISSY | Case No. CV 11-1012 RS |
| Plaintiffs, <br><br> vs. <br><br> MARK G. YUDOF, PRESIDENT OF THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, BERKELEY, in his individual capacity only as to damages, and in his official capacity as to injunctive and declaratory relief; THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; ROBERT J. BIRGENEAU, CHANCELLOR OF THE UNIVERSITY OF CALIFORNIA, BERKELEY, in his individual capacity, as to damages, and in his official capacity as to injunctive and declaratory relief; JONATHAN POULLARD, DEAN OF STUDENTS OF THE UNIVERSITY OF CALIFORNIA, BERKELEY, in his individual capacity, as to damages, and in his official capacity as to injunctive and declaratory relief; ASSOCIATED STUDENTS UNIVERSITY OF CALIFORNIA (ASUC), <br><br> Defendants. | **DECLARATION OF BRIAN MAISSY** |

DECLARATION OF BRIAN MAISSY

1    I, Brian Massy, declare:

2    1.    I am a third year EECS undergraduate student at the University of California

3    Berkeley. As such I am on campus almost all weekdays. I have personal knowledge of the

4    facts stated herein and if called as a witness I would truthfully and competently testify as

5    follows.

6    2.    On or about March 17, 2011 between 11 a.m. and 2 p.m., I observed members of

7    the group Students for Justice in Palestine, engage in action as part of their "Apartheid Week"

8    As I will describe fully below, as a Jewish student on campus, I have come to dread and fear

9    "Apartheid Week," as a time where myself and other Jewish students feel endangered,

10   intimidated, and harassed.

11   3.    "Apartheid Week" is a time designated by certain campus groups such as the

12   Muslim Students Association (MSA), and the so-called Students for Justice in Palestine (SJP),

13   to attempt to de-legitimize the existence of the State of Israel by way of asserting that Israel

14   engages in abhorrent racist tactics, equated directly to the system of government in place by the

15   white South African government, between 1948 and 1993.

16   4.    In the three years that I have been on campus, I have witnessed the events of

17   "Apartheid Week," and in each year, I have felt endangered, intimidated and harassed.

18   5.    As part of "Apartheid Week," each year for the past three years, I have

19   witnessed members of the SJP create barriers on campus in an effort to simulate what, in their

20   view, security checkpoints are like in Israel.

21   6.    Many members of SJP wear Israeli flags, which contain the Jewish star, and

22   they have signs with Hebrew writing on them; and many carry mock semiautomatic weapons

23   that look real.

24   7.    The members of SJP thus pretend to be Jewish Israelis. They set up a

25   checkpoint at Sather Gate, where they interrogate students to determine whether they should be

26   allowed to pass through the checkpoint, and they "act out" the supposed harassment of

27   Palestinians on each other.

28

DECLARATION OF BRIAN MAISSY

8. I have witnessed the "interrogators" — those pretending to be Jewish Israelis — being rude, obnoxious, overbearing, aggressive and violent.

9. I have witnessed this kind of behavior for the past three years.

10. I personally know that the assault on Jessica Felber took place in proximate time to "Apartheid Week" on campus.

11. I also know that the University each year approves "Apartheid Week."

12. On March 17, 2011, I specifically observed the following on campus. I saw the students from SJP (dressed like Israeli Jews) blocking most of Sather Gate. I observed that they had put down a material which looked like barbed wire or at least was supposed to simulate barbed wire at the checkpoint at Sather Gate.

13. I personally observed the simulated "barbed wire" get caught in an individual's wheelchair, and he dragged it with him for a few feet, at which point he realized, and others assisted him to disentangle his wheelchair; hence, his independence and ability to move around campus was blocked and inhibited by persons who were wearing Israeli flags.

14. Following witnessing the student in the wheelchair getting stuck in the "barbed wire," I wrote Dean Poullard describing the situation; the full text of my email is as follows:

> "Hi JP and representative of the Center for Student Conduct,
> As you may be aware, the student group Students for Justice in Palestine (SJP) held a mock checkpoint demonstration at Sather Gate the Thursday before spring break (March 17th) between 11am and 2pm. They were, as usual, spreading falsehoods about Israel, but that's not why I'm writing to you today.
> On the 17th, members of SJP dressed up as Israeli soldiers and acted out what they falsely assert happens at an Israeli security checkpoint. They blocked the central section of Sather gate with caution tape and wire laid on the floor. This obstruction caused difficulty to students trying to pass through Sather Gate. I personally witnessed a disabled student get his wheelchair caught on the wire as he tried to cross the gate on his way to or from class. This is in clear violation of Berkeley Campus Regulations Implementing University Policy clause 321. They also brandished fake weapons and intimidated passers-by, in violation of clauses 211 and 312 requiring compliance with state law (California Penal Code section 12556 bans toy and look-alike weapons in public places).
> Neither of these offences comes as a surprise. Both of these violations have become an annual occurrence by SJP, and have been repeatedly reported to UCPD and to the Center for Student Conduct. Year

DECLARATION OF BRIAN MAISSY

1   after year however, we get no response, and more importantly, the
    offenders do not change their actions.

2          The purpose of the Center for Student Conduct is to create an

3   atmosphere on campus where the values of the university are realized,
    where students and student groups adhere to campus policies, and where

4   students feel safe and comfortable walking down Sproul plaza. SJP
    consistently and systematically violates University rules, at the expense of

5   students who are innocently passing by and wish to ignore them. SJP must
    respect the rules and play fairly like every other student group. The failure

6   of the university to correct the problem contributes to the unsafe

7   atmosphere that many Jewish students feel exists and is growing on this
    campus.

8          I hope this issue will finally be addressed with SJP and there will

9   be no more obstructions of public walkways, wielding of imitation
    weapons, or other intimidating actions on their part in the future.

10  Thank you,
    Brian Maissy

11  Third year EECS undergraduate"

12  15.   On March 29, 2011 Dean Poullard wrote me back. The full text of Dean

13  Poullard's email is as follows:

14          "On Tue, Mar 29, 2011 at 1:19 PM, <poullard@berkeley.edu wrote:
    Brian,

15          Thank you for your thoughtful email. Hopefully my response will

16  help to once again clarify the role and responsibilities of the Center for
    Student Conduct and Community Standards, the Center for Student

17  Leadership and UCPD.

18          As you have aptly noted, members of SJP have held events that
    simulate their perception of an Israeli checkpoint and have used Sproul

19  Plaza and Sather Gate as sites for their activities. Consistent with past
    demonstrations, SJP has worked with CSL and UCPD to stage their

20  activity and have followed guidelines to hold their event. While there was
    a moment of difficulty that a student in a wheelchair had in passing the

21  demonstration, CSL staff and UCPD officers watched SJP members

22  quickly assist the person in passing the checkpoint on March 17, 2011.
    The organizers then placed one of their members in the area to further

23  assist any other individuals in passing the demonstration in that area.
    Additionally, UCPD reviewed the fake weapons they were utilizing in

24  their demonstration. which were made of think wooden boards, to ensure
    that they were aligned with the provisions of the California Penal Cide set

25  forth in section 12556.

26          We continue to uphold student's rights to protest/hold
    demonstrations as long as they comport with policies set for such

27  activities. That said, I am more than willing to meet you and any other
    interested students on this matter.

28          JP"

---

-4-

DECLARATION OF BRIAN MAISSY

16.     Upon receiving Dean Poullard's response on March 29, I wrote him back.. The full response of my email is as follows:

> Subject: Re: SJP repeated violation of campus policy
> From:    "Brian Maissy" <brianmaissy@berkeley.edu
> Date:    Tue, March 29, 2011 1:33 pm
> To:      poullard@berkeley.edu
> Cc:      studentconduct@berkeley.edu
>          trageser@berkeley.edu
>          mjc@berkeley.edu
>          acarlton@berkeley.edu
> ------------------------------------------------------------------------
> I don't see how helping students who have difficulty crossing the barricade makes it any less of a barricade, in the middle of a major walkway on campus. It was disrupting traffic. I have never seen another student group need to block traffic on campus to get their message across.
>
> Additionally, their materials were attached to Sather Gate, which is also against campus policy.
>
>> "352. Tables and other display materials may not block any entrance or walkway, or otherwise restrict the free flow of vehicular or pedestrian traffic. No display materials may be placed on or against, or be attached to any structure or natural feature of the campus, including, but not limited to the sides of doors or buildings, fountains, posts, waste receptacles, trees or stakes."
>
> It seems that SJP was in clear violation of this regulation on both counts. Are you saying CSL staff and UCPD think that SJP did not violate this policy, or did they grant them an exception?
> Brian"

18.     I am a Jewish student. I do not feel safe on my campus because of the actions of a few radical groups. Clearly, as confirmed by the email from Dean Pollard (actual emails attached hereto) the student in a wheelchair was also affected by the actions of a radical group on campus.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct, and that I signed this declaration on May 9, 2011, in Berkeley, California.

                                                      /S/
                                      _____
                                              BRIAN MAISSY

The right car insurance can save you more than you think.

TRAVELERS

From: Brian Maissy <br~~nmaissy@berkeley.edu>

Subject: Re: SJP repeated violation of campus policy
To: poullard@berkeley.edu
Cc: studentconduct@berkeley.edu, trageser@berkeley.edu, mjc@berkeley.edu, acarlton@berkeley.edu
Date: Tuesday, March 29, 2011, 1:33 PM

I don't see how helping students who have difficulty crossing the barricade makes it any less of a barricade, in the middle of a major walkway on campus. It was disrupting traffic. I have never seen another student group need to block traffic on campus to get their message across.

Additionally, their materials were attached to Sather Gate, which is also against campus policy.

"352. Tables and other display materials may not block any entrance or walkway, or otherwise restrict the free flow of vehicular or pedestrian traffic. No display materials may be placed on or against, or be attached to any structure or natural feature of the campus, including, but not limited to the sides of doors or buildings, fountains, posts, waste receptacles, trees or stakes."

It seems that SJP was in clear violation of this regulation on both counts. Are you saying CSL staff and UCPD think that SJP did not violate this policy, or did they grant them an exception?

Brian

On Tue, Mar 29, 2011 at 1:19 PM, <poullard@berkeley.edu> wrote:

Brian,

Thank you for your thoughtful email. Hopefully my response will help to once again clarify the role and responsibilities of the Center for Student
Conduct and Community Standards, the Center for Student Leadership and UCPD.

As you have aptly noted, members of SJP have held events that simulate their perception of an Israeli checkpoint and have used Sproul Plaza and
Sather Gate as sites for their activities. Consistent with past demonstrations, SJP has worked with CSL and UCPD to stage their activity and have followed guidelines to hold their event. While there was a moment
of difficulty that a student in a wheelchair had in passing the demonstration, CSL staff and UCPD officers watched SJP members quickly
assist the person in passing the checkpoint on March 17, 2011. The organizers then placed one of their members in the area to further assist any other individuals in passing the demonstration in that area.
Additionally, UCPD reviewed the fake weapons they were utilizing in their demonstration. which were made of think wooden boards, to ensure that they
were aligned with the provisions of the California Penal Cide set forth in section 12556.

We continue to uphold student's rights to protest/hold demonstrations as
long as they comport with policies set for such activities. That said, I

am more than willing to meet you and any other inter      d students on this matter.

JP


Hi JP and representative of the Center for Student Conduct,
>
> As you may be aware, the student group Students for Justice in Palestine
> (SJP) held a mock checkpoint demonstration at Sather Gate the Thursday
> before spring break (March 17th) between 11am and 2pm. They were, as
> usual, spreading falsehoods about Israel, but that's not why I'm writing to you
> today.
>
> On the 17th, members of SJP dressed up as Israeli soldiers and acted out
> what they falsely assert happens at an Israeli security checkpoint. They
> blocked the central section of Sather gate with caution tape and wire laid
> on the floor. This obstruction caused difficulty to students trying to
> pass through Sather Gate. I personally witnessed a disabled student get his
> wheelchair caught on the wire as he tried to cross the gate on his way to
> or
> from class. This is in clear violation of Berkeley Campus Regulations
> Implementing University Policy clause 321. They also brandished fake
> weapons and intimidated passers-by, in violation of clauses 211 and 312 requiring

> compliance with state law
(California Penal     e section 12556 bans toy
> and look-alike weapons in public places).
>
> Neither of these offences comes as a surprise. Both of these violations
> have become an annual occurrence by SJP, and have been repeatedly reported to
> UCPD and to the Center for Student Conduct. Year after year however, we
> get no response, and more importantly, the offenders do not change their
> actions.
>
> The purpose of the Center for Student Conduct is to create an atmosphere
> on campus where the values of the university are realized, where students and
> student groups adhere to campus policies, and where students feel safe and
> comfortable walking down Sproul plaza. SJP consistently and systematically
> violates University rules, at the expense of students who are innocently
> passing by and wish to ignore them. SJP must respect the rules and play
> fairly like every other student group. The failure of the university to
> correct the problem contributes to the unsafe atmosphere that many Jewish
> students feel exists and is growing on this campus.
>
> I hope this issue will finally be addressed with SJP and there will be no
> more obstructions of public

walkways, wieldi    f imitation
weapons, or
> other intimidating actions on their
part in the future.
>
> Thank you,
>
> Brian Maissy
> Third year EECS undergraduate

# EXHIBIT "B"

**SJP and MSA Students**

**Brandishing Realistic-Looking Assault Weapons**









