JOEL H. SIEGAL, ESQ. [SBN: 117044]
Attorney at Law
703 Market Street, Suite 801
San Francisco, CA 94103
Telephone:      (415) 777-5547
Facsimile:      (415) 777-5247
Email:          joelsiegal@yahoo.com

NEAL M. SHER, ESQ. [New York Bar # 1092329]
Attorney at Law
551 Fifth Avenue, 31st Floor
New York, NY 10176
Telephone:      (646) 201-8841
Email:          nealsher@gmail.com

Attorneys For Plaintiffs JESSICA FELBER and BRIAN MAISSY

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JESSICA FELBER<br>and BRIAN MAISSY<br><br>                    Plaintiffs,<br><br>vs.<br><br>THE REGENTS OF THE UNIVERSITY<br>OF CALIFORNIA,<br><br>                    Defendant. | Case No.  CV 11-1012 RS<br><br>**SECOND AMENDED CIVIL RIGHTS COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF TO PREVENT CONTINUED ENDANGERMENT OF HEALTH AND SAFETY OF JEWISH UNIVERSITY OF CALIFORNIA STUDENTS:**<br><br>1)   United States Constitution–<br>      Amendment I and XIV<br>2)   Title VI of the Civil Rights Act of 1964;<br>3)   Injunctive and Declaratory Relief<br>      to Compel Defendant to Affirmatively<br>      Monitor and Enjoin SJP and MSA<br>      to Stop Obstructive and Violent<br>      "Apartheid Week" Misconduct |

**COMPLAINT**

Plaintiffs JESSICA FELBER ("Jessica") and BRIAN MAISSY ("Brian") allege:

**INTRODUCTION**

On March 5, 2010, Jessica Felber, a twenty year old Jewish student at the University of California, Berkeley ("UCB" or UC Berkeley") was attacked and injured on defendant UC Berkeley's campus.  Jessica's attack came in the middle of "Apartheid Week."  Apartheid Week is a University of California, Berkeley, sanctioned and supported week sponsored in part with UC Berkeley Funds by Students for Justice in Palestine ("SJP"), and the Muslim Student Organization ("MSA") (also known as the "Muslim Students Union").  The purpose of "Apartheid Week" is to delegitimize the existence of the State of Israel in an effort to equate Israel with the system of government in place by South Africa between 1948 and 1993.  While, parts of "Apartheid Week," for example informational tables and leaflet distribution are certainly protected free speech, certain actions in "Apartheid Week" such as the establishment of checkpoints where students brandish realistic-looking assault weapons, place barbed wire on campus walkways, and interrogate students as they pass, are neither protected-First Amendment speech, and as occurred here, and which occurred most recently on March 17, 2011, constitute a hostile environment against UC students and interfere with their education, freedoms and privileges.

Felber was assaulted on March 5, 2010, during "Apartheid Week" because of her Jewish ancestry and religious affiliation and  because she was peacefully holding a sign stating "Israel wants Peace."  The assailant, Husam Zakharia, also a UC Berkeley student, was then the leader of Students For Justice in Palestine which is a UC Berkeley Registered Student Organization.  As alleged more fully below, SJP and Zakharia have been involved in other incidents on campus to incite violence against and intimidate Jewish and other students. Defendant had prior knowledge of this history of incitement and intimidation, but took no reasonable steps to adequately control Zakharia or other student members of the SJP to protect against the hostile environment toward Jewish students as alleged herein.

1    The SJP conspires and coordinates with another UC Berkeley RSO, the Muslim Student

2  Organization (also known as the "Muslim Students Union").  As alleged more fully below, the

3  MSA has a publicly documented history of affiliation with and support of organizations

4  deemed "terror organizations" by the United States Department of State.  Most recently eleven

5  students from those groups were convicted under California law of unlawfully inciting and

6  disrupting a speech given by Israeli Ambassador Michael Oren, at University of California,

7  Irvine.

8    Joining Felber in this case as a plaintiff is Brian Maissy, a third year EECS

9  undergraduate student at University of California, Berkeley, where the policies enacted by the

10  Regents, their officers and employees, over the next several years will  play an important role

11  in the exercise of Mr. Maissy's rights.  Attached to this First Amended Complaint as Exhibit A

12  are the declarations of Brian Maissy describing events on campus on March 17, 2011, which

13  make him and other Jewish students feel endangered, intimidated, and harassed.

14    This case concerns the Regents deliberate indifference to the development of a

15  dangerous anti-Semitic climate on its campuses, and their discriminatory failure  to adopt and

16  implement policies, regulations and student organizations procedures to prevent threats,

17  intimidation and harassment by the anti-Semitic/anti-Israel SJP, MSA and MSU, all of which

18  that threatens and endangers the health and safety of University of California's Jewish students.

19  Furthermore this case concerns the fact that the Regents, their officers and employees,

20  discriminate against Jewish students by providing for greater protection against hostile acts by

21  students and student groups against black students, female students, and other protected

22  students, than they provide for Jewish students.

23    This action seeks to ensure that defendant effectively polices, disciplines, and

24  eliminates the incitement to violence, intimidation and harassment by  RSO Palestinian and

25  Muslim activist groups, all of which  make the UC Berkeley, and other UC campuses, a

26  dangerous and threatening environment. Each year, "Apartheid Week" with its checkpoints,

27  students brandishing realistic-looking assault weapons, barbed wire placed on heavily travelled

28

1    campus walkways, and the frenzy connected with it, make Jewish students and faculty feel

2    particularly endangered, intimidated and harassed.

3                                        **THE PARTIES**

4            The claim under Title VI for damages, injunctive and declaratory relief is brought by

5    plaintiffs Jessica Felber and Brian Maissy complaining against defendant The Regents of the

6    University of California, as described below:

7            1.      Jurisdiction vests with this Court under 28 U.S.C.A. §1331, under the U.S.

8    Constitution, First Amendment and U.S. Constitution Fourteenth Amendment (Art. I U.S.

9    Constitution, Amendment XIV, U.S. Constitution), Title VI (42 U.S.C.A. §2000d).

10           2.       Venue in this case vests in the Northern District of California as all the acts and

11   omissions described herein took place on the campus of the University of California, Berkeley

12   and at the Offices of The Regents in Oakland, California.

13           3.      The plaintiffs Jessica Felber and Brian Maissy at all times material to this action

14   were residents of the County of Alameda, State of California, and registered students of UC

15   Berkeley; plaintiff Brian Maissy is currently an EECS undergraduate student at UC Berkeley

16   and on campus most weekdays.

17           4.      Defendant The Regents of the University of California ("The Regents") is

18   organized under the laws of the State of California, and entrusted with the responsibility of

19   providing public education to students including but not limited to college students whose ages

20   could range starting as early as 16 years old. The Regents of the University of California,

21   Berkeley, is also the recipient of federal funds as that term is defined under Title VI, 42

22   U.S.CA 2000.

23           5.      Although California Government Code §900, et seq., requires that notice of

24   certain claims against certain public entities be presented in specific ways, defendant The

25   Regents of the University of California and UC Berkeley are exempt from these claims' filing

26   provisions under California Government Code §905.6.  Notwithstanding §905.6, plaintiffs did

27   timely file their notice of claims against defendant.

28

6.      At all relevant times, defendant The Regents of the University of California has been and is now an agency of the state government vested with authority to control, manage and administer the public facilities within the University of California, Berkeley, located within Alameda County.

7.      At all relevant times, defendant has been and is now empowered to implement the policies that govern the conduct of persons affected and utilizing the University of California, Berkeley, Irvine, San Diego, and other campuses.

8.      Plaintiffs have no plain, speedy or adequate remedy at law, and they are threatened by irreparable harm.  For that reason, Plaintiffs seek injunctive and declaratory relief.

9.      Plaintiffs Jessica Felber and Brian Maissy are citizens of the United States and of Jewish ancestry and religion, and at all times relevant herein are students of UC Berkeley. Felber did graduate in December 2010.  Maissy, however, is a third year EECS undergraduate student who is on the campus most weekdays. As alleged more fully below, and at all times relevant hereto, they have peacefully and nonviolently tried to exercise their constitutional rights to freedom of speech and freedom of assembly on the cause of peace and reconciliation for the Jewish People and Land of Israel.

### STATEMENT OF FACTS

10.      Plaintiffs Jessica Felber at age 17, and Brian Maissy at age 17, were  admitted and enrolled to the UC Berkeley.  At the time they enrolled plaintiffs (like thousands of students in the University of California system) were minors, and UC Berkeley assumed the role of loco parenti for plaintiffs.

11.      As will be described below, the March 2010 assault on Felber was a product of defendant's policies which (1) fostered and encouraged MSA and SJP campus terrorist incitements; (2) turned a blind eye to the perpetrators of illegal activities; (3) failed to effectively discipline the MSA and SJP for their pro-terrorist programs, goals and conduct; despite having ample notice that such violence was foreseeable; (4) defendant failed to provide adequate security to prevent the violence, harassment and intimidation which occurred on

1   March 5, 2010; and 5) thereby condoned and allowed the MSA, the SJP and MSU to threaten,

2   harass and intimidate Jewish students and to endanger their health and safety. Even after the

3   initial filing of this Complaint on March 4, 2011, and after numerous other complaints and

4   warnings about "Apartheid Week," Defendants sanctioned and supported "Apartheid Week" in

5   a manner that is more than the establishment of information tables and distribution of leaflets.

6   Defendant expressly authorized the SJP to brandish realistic-looking assault weapons on

7   campus, placement of barbed wire on campus walkways, and "interrogation" of students by

8   rude, obnoxious overbearing and violent tactics (see Declarations of Brian Maissy, Exhibit A),

9   and granted exemptions from UC Berkeley Rules on Sproul Plaza political activities to the

10  SJP/MSA. In fact UC Berkeley Dean Poullard on March 29, 2011 sent an email to plaintiff

11  Maissy admitting the defendant had expressly authorized and permitted and monitored the

12  intimidating and obstructive March 2011 Sproul Plaza Apartheid Week SJP "Checkpoint":

13          As you have aptly noted, members of SJP have held events that
14      simulate their perception of an Israeli checkpoint and have used Sproul
        Plaza and Sather Gate as sites for their activities. Consistent with past
15      demonstrations, SJP has worked with CSL and UCPD to stage their
        activity and have followed guidelines to hold their event. While there was
16      a moment of difficulty that a student in a wheelchair had in passing the
        demonstration, CSL staff and UCPD officers watched SJP members
17      quickly assist the person in passing the checkpoint on March 17, 2011.
        The organizers then placed one of their members in the area to further
18      assist any other individuals in passing the demonstration in that area.
        Additionally, UCPD reviewed the fake weapons they were utilizing in
19      their demonstration. which were made of think wooden boards, to ensure
        that they were aligned with the provisions of the California Penal Cide set
20      forth in section 12556.
21          We continue to uphold student's rights to protest/hold
        demonstrations as long as they comport with policies set for such
22      activities. That said, I am more than willing to meet you and any other
        interested students on this matter.
23       JP"

24

25  In permitting use of imitation AK47s in the SJP Checkpoint demonstrations, defendant shows

26  deliberate indifference to the welfare of its Jewish students, and indifference to findings of

27  several respected law enforcement agencies that the MSA and SJP have ties to terrorist groups

28  including Hamas and the Muslim Brotherhood, and that an image of an AK47 is the central

1   symbol of Hamas, its worldwide known logo and banner/flag.  Defendant's deliberate

2   indifference to the SJP/MSA display of simulated AK47 firearms empowers these groups to

3   flaunt that terrorist symbol of Hamas' terrorist "armed struggle," which in the past Hamas

4   terrorists have used for the murder of innocent Jews.

5                                   **THE FELBER ASSAULTS**

6            12.     On March 5, 2010, Jessica Felber and a group of other students were

7   participating in an event on campus called "Israel Peace and Diversity Week"—a series of

8   events sponsored by Tikvah, a sanctioned campus group; this event was an effort to peacefully

9   present viewpoints differing from "Apartheid Week." As part of that event, Jessica was on

10  campus holding a placard that read "Israel wants Peace."  At that moment, another UC

11  Berkeley student, Husam Zakharia,  who is a leader of UC Berkeley's RSO "Students for

12  Justice in Palestine" (SJP), intentionally rammed a shopping cart into Jessica, causing her

13  physical injury, for which she received medical attention.  .

14           13.     At the time of the assault, there was no adequate campus security present to

15  prevent the assailant, whose purpose in attacking Jessica was to vent his hostility toward the

16  non-violent message stated in her placard and her Jewish identity

17           14.     As a consequence of the violent assault, Jessica sought and obtained medical

18  treatment at the UCB Campus Urgent Medical care.  She also engaged legal counsel to obtain a

19  state court restraining order to keep Husam Zakharia away from her, even while on campus.

20  Alameda County Superior Court Commissioner Jon Huntsman, signed the permanent

21  restraining order to that effect on May 25, 2010; for the remainder of her time on campus,

22  Jessica was fearful to walk on campus alone, and she suffered academic disadvantages and loss

23  of benefits as alleged more fully below.

24           15.     This was not the first time that Zakharia had assaulted Felber, and Felber had

25  brought to Defendant's attention.  In or around January 2009, Zakharia spat at Felber during a

26  political rally and yelled "You are disgusting." Later that semester Dean Poullard, individually

27  and as an agent of Defendant, decided he wanted to hold meetings with both Tikvah and SJP

28  about the conflict on campus.  At Tikvah's meeting with Poullard, many students brought up

instances about intimidation by SJP members.  Felber spoke about being spat at by Zakharia.  When relaying the story, Felber said "he spat at me."  Poullard interrupted Felber and said "Wait wait wait, he spat AT you or On you?"  Felber said "I didn't really know why that makes a difference but that yes, he spat AT me."  Poullard responded saying "spitting At someone is very different from spitting ON someone.  Spitting ON someone is a big deal."  But Dean Poullard's comments cheapened and humiliated her.  He made her feel that simply because Zakharia had not hit her directly in her face with his spit, that her personal space and dignity were not violated on campus.  The Dean's inaction amplified her fear.

### THE HARASSMENT, INTIMIDATION AND ASSAULT WERE ORCHESTRATED BY THE STUDENTS FOR JUSTICE IN PALESTINE AND THE MUSLIM STUDENT ASSOCIATION

16.     The Students for Justice in Palestine (SJP) is a national student organization that was founded at UC Berkeley in 2001.

17.     The SJP is overtly political; and it accounts for the majority of anti-Israel activism and anti-Semitic posturing among students at the academies where there are chapters.  At UC Berkeley the SJP/MSA not only co-sponsor events and cooperate on strategic projects, but they even share the same office and campus facilities.  The more publicly activist SJP may be understood as the militant arm of the outwardly benevolent MSA. Members of the former are often members of the latter. The SJP at Berkeley receives less money from the ASUC than the MSA, perhaps because it is classified as a political rather than a religious/cultural organization, yet the two groups are linked together.

18.     The members of SJP have often employed aggressive tactics, and sometimes commit acts of violence.

### FORMATION AND EARLY ACTIVITY OF SJP

19.     "Students for Justice in Palestine" first appeared in the Berkeley campus paper, The Daily Californian, on October 25, 2000, when it was described as "a coalition of campus groups."  At that time the organization had not yet been registered with the Associated Students of the University of California (ASUC), although soon it would be. The coalition's leaders

1   called for an international boycott of all Israeli products and an end to U.S. economic support

2   of Israel.

3           20.     Four months later, the newly born SJP staged its first disruptive "checkpoint" in

4   connection with "Apartheid Week" (as shown in pictures in attached Exhibits).  On information

5   and belief following the first checkpoint, the campus newspaper condemned the checkpoint of

6   the demonstrators as violating the campus Code of Conduct by posting materials on university

7   property without permission and interfering with university activity.  However, checkpoint

8   protests continue, with the most recent occurring on March 17, 2011, when a student in a

9   wheelchair was accidentally entangled in the barbed wire (see Declaration of Brian Maissy,

10  Exhibit A, including email from Dean Poullard . "Checkpoint protest" will be described more

11  fully herein.  Also attached as various exhibits are photos depicting "Apartheid Week" and

12  campus checkpoints for several years leading up to the most recent March 2011 events.  These

13  checkpoints violate California Penal Code §12556 regarding use of imitation guns, and

14  Berkeley Campus Regulations sections 211, 312, and 321.

15          21.     On April 24, 2001, thirty-two SJP demonstrators who called for cutting

16  academic ties with Israel were arrested for obstructing access to Wheeler Hall during a six-hour

17  siege. In violation of fire codes and other regulations, the SJP had chained closed nine of the

18  twelve doors to the building and linked their arms to block the remaining entrances.  At this

19  time, UC Professor Mel Gordon was attacked and beaten by SJP activitists.

20          22.     As will be described more fully herein, the SJP has been involved in numerous

21  other violent, anti-Israel, anti-Semitic demonstrations on several campuses of the University of

22  California System.  In January 2011, SJP and MSA protestors were so disruptive at a speech

23  given by the Israel Ambassador, Michael Oren, that the District Attorney in Orange County has

24  brought conspiracy indictments against eleven students; ten were convicted by Orange County

25  Superior Court on September 23, 2011.

26

27

28

-9-

SECOND AMENDED COMPLAINT FOR DAMAGES, etc.                          SAC_010512f.doc
                                                                   Case No. CV 11-1012 RS

## THE NATIONAL MUSLIM STUDENTS ASSOCIATION (MSA)

23.     The Muslim Students Association (MSA) was created in January 1963 at the University of Illinois Urbana-Champaign. According to its Constitution, its aims and purposes are "to serve the best interest of Islam and Muslims in the United States and Canada so as to enable them to practice Islam as a complete way of life." According to MSA's Facebook page, the initial leadership of the MSA, "came from Arabic-speaking members with the Muslim Brotherhood's help to establish the group. A Saudi Arabian charity, the Muslim World League, provided early funding for the group."

24.     The MSA, which in connection with the SJP, puts on the annual "Apartheid Week" Sproul Plaza checkpoint, is an organization founded by the Muslim Brotherhood. Prerequisite of membership into the Muslim Brotherhood is membership in the MSA. While the Muslim Brotherhood itself is not on the U.S. Department of State's Foreign Terrorist Organizations list, its Palestinian branch called Hamas is. Hamas states in its charter that it is a branch of the Muslim Brotherhood. The New York City Police Department has stated that the MSA is "an incubator" to recruit and radicalize students and to support Hamas. (See Declaration of Ronald Sandee attached hereto as Exhibit I.) "[I]nvestigators have revealed how terrorist groups systematically conceal their activities behind charitable, social, and political fronts." [M. Levitt, Hamas: Politics, Charity, and Terrorism in the Service of Jihad, 2-3 (2006) (Yale University Press), quoted by Chief Justice Roberts in Holder v. Humanitarian Law Project (2010) 561 U.S. ___ at ____; 130 S.Ct. 2705 at 2725.]."

## THE MSA AT UNIVERSITY OF CALIFORNIA, BERKELEY

25.     The Muslim Students Association of the United States and Canada is divided into five geographical zones. It maintains a website that lists 148 separate MSA "Councils and Chapters" at high schools, colleges and universities in the western third of the United States, including UC Berkeley.

26.     Founded during the 1986-87 academic year, the Muslim Students Association (MSA) of UC Berkeley, which is also known as the Muslim Student Union (MSU), has become one of the largest and most active chapters in North America. Ostensibly its mission is to

1  support those who wish to understand, appreciate, and practice their Islam without

2  compromising their morals and beliefs; to educate non-Muslims about the misconceptions

3  regarding Islam and the Islamic way of life; and to foster a social community for Muslims.

4        27.     The MSA is a funded organization on campus, and received $9,040.14 from the

5  Associated Students of the University of California-Berkeley (ASUC) for the 2008-09

6  academic year.  The group received $8,500 for 2006-07, $7,840.35 for 2005-06, and $8,250 for

7  2004-05.  The MSA publication Al-Bayan, founded in 2000, was allocated $1,225 in 2008-09,

8  $1,255 in 2006-07, and $935 in 2004-05.  These sums are supplemented by monies that are

9  raised from fundraising events, or allocated from MSA National.  Student groups that are

10  political in nature, receive less money than religious or cultural associations. The violent

11  political activities of the MSA, outlined below, have not negatively affected its public funding

12  allocation, and defendant Regents has never acted to cutoff such funding in response.

13        28.     In recent years, the MSA at UC Berkeley does not merely promote social

14  networking, encourage observance of Islam, and plan religious, cultural and charitable events;

15  it engages in political activism and mobilizes Muslims, both on and off campus, for activist

16  projects. The Constitution of the Muslim Student Union of Berkeley states one objective is to

17  "develop activism of Muslims on campus and in the community."  The chapter has its own

18  Political Action Committee.  Significantly, a sub-section of the National MSA manual entitled

19  "Political/Campus Action" urges members to "consider forming committees for certain issues

20  that need to be addressed on the campus or larger level.  The MSA on campus has been actively

21  involved in "Apartheid Week."

22        29.     The Muslim Students Association has supported the Holy Land Foundation

23  Relief and Development, five of whose leaders were convicted in 2007 on 108 separate charges

24  after an investigation lasting over fifteen years determined that the organization funneled more

25  than twelve million dollars to Hamas, a terrorist organization. See, *U.S. v. Holy Land*

26  *Foundation* (5th Cir. 2010) 624 F3d 685.

27

28

30.     The relationship between the SJP, MSA and MSU, and their common goals and tactics were well known to defendant at all times relevant herein, as is their involvement yearly in "Apartheid Week."

### DEFENDANT WAS ON NOTICE THAT MEMBERS OF THE SJP AND MSA POSED THREATS ON CAMPUS

31.     The March 5, 2010 assault against Jessica was not the first time that Husam Zakharia and others from SJP acted violently against Jewish students. Physical intimidation and violence were frequently employed as a tactic by SJP and other campus groups in an effort to silence students on campus who support Israel.  In addition, as will be alleged herein, the University has consistently failed to discipline and effectively condemn SJP and its affiliate RSO, the Muslim Student Association.  Each year the crescendo of SJP and MSA activity occurs in March during "Apartheid Week."  Indeed, Jessica's assault occurred during "Apartheid Week," and as the Declaration of Maissy makes clear, the subjective and objective fears of Jewish students heightens during "Apartheid Week."

32.     Moreover, defendant had multiple notices of harassment, intimidation, incitement and violence committed by the SJP and MSA against Jewish students at its UC Berkeley, Irvine, and San Diego campuses.  On or about October 11, 2004, the Zionist Organization of America, a civil rights group, lodged a formal 11-page Title VI complaint against the defendant Regents' Irvine Campus with the Department of Education Office of Civil Rights outlining Anti-Semitic Title VI violative conduct  by the Muslim Students Union/MSA, and deliberate indifference by the Irvine administrators.  This led to an open and ongoing Department of Education investigation, still pending, referenced in Case No. 09-05-2013.  (October 11, 2004 ZOA Complaint is attached as Exhibit J.) On December 30, 2008, the Zionist Organization of America wrote Chancellor Birgeneau at UC Berkeley directly, with a copy to UC President Yudof, outlining the herein complained of SJP/MSA anti-Semitic campaigns of intimidation and harassment of Jewish students, and the deliberate indifference of UC Berkeley administrators to control and reduce that misconduct.  (December 30, 2008 letter is attached as Exhibit K.) Despite such warnings, as alleged above, UC Berkeley

1    administrators, deans, and security police have continued to allow the SJP and MSA to mount

2    their intimidating and harassing Apartheid Week "armed checkpoints."  (Copies of the Zionist

3    Organization of America's letters attached hereto and by this reference are incorporated

4    herein.)

### PRIOR ACTS BY SJP AND MSA
### AGAINST JEWISH UNIVERSITY OF CALIFORNIA STUDENTS

5

6

7    <u>**University of California—Berkeley Campus**</u>

8        33.    At the UC Berkeley campus, the SJP and MSA have at several times staged an

9    armed "checkpoint" which are pictured in Exhibit B, attached hereto, flaunting and brandishing

10   realistic-looking assault weapons.  Also attached are the following:  Exhibit C are photos of the

11   March 17, 2011 checkpoint barbed wire and interrogations;  Exhibit D are photos of SJP and

12   MSA demonstrators with coffins blocking campus walkways;  Exhibit E are photos of the 2009

13   checkpoints;  Exhibit F are photos of the 2010 checkpoints;  Exhibit G are photos of the most

14   recent 2011 checkpoint (referenced in the Declaration of Maissy); Exhibit H are photos of

15   vandalized Jewish signs on campus.  Plaintiff Jessica Felber's assailant Husam Zakharia is

16   pictured at the checkpoint talking to UC Campus Police on May 7, 2008 in Exhibit B.  At the

17   checkpoint UC Berkeley students are confronted and demanded to state their religious

18   affiliation, specifically if they are Jewish.  Although many students have complained to

19   defendant, the defendant has done nothing to prevent the continuance of these hostile

20   "checkpoints."

21       34.    On information and belief in or about November 2008, the SJP and MSA lead

22   by Zakharia disrupted a concert organized by TIKVAH, a campus Jewish student group on the

23   UCB campus.  Zakharia assaulted a Jewish UCB student.  Zakharia and two other SJP activists

24   were cited for battery by UC Campus Police.  However, defendant failed to discipline SJP or

25   Zakharia, such that UCB's actions allowed and encourage the SJP and MSA to continue and

26   amplify their aggressive and violent threats, plans and activities. Following this incident,

27   UC Berkeley Professor Mel Gordon, who himself had been assaulted by SJP activists in 2001,

28

SECOND AMENDED COMPLAINT FOR DAMAGES, etc.

1   wrote to UC Berkeley Chancellor Birgeneau reminding him of the SJP record of violence and

2   intimidation.

3         35.     On February 24, 1995, at the UCB campus, the MSA conducted a rally in

4   support of Hamas, the Middle East extremist group, soon after a series of bus and sidewalk

5   bombings in Israel. Students from several northern California campuses carried signs depicting

6   an Israeli flag with a swastika in the middle and expressly volunteered to serve as future suicide

7   bombers. A Jewish observer was spit on by one of the demonstrators. On information and

8   belief, there was no effective condemnation by Defendant. This incident was reported on

9   publicly.

10                            **Prior Known Incidents**

11        36.     On October 2000, the president of UCLA's MSA led a crowd of demonstrators

12  at the Israeli consulate in chants of "Death to the Jews!"  This incident was reported on

13  publicly.

14        37.     In December 2001, a member of Chabad, a Jewish religious group at UC

15  Berkeley, was assaulted on campus near the Chabad house.  During spring break of 2002, the

16  Hillel window was smashed and graffiti stating, "Fuck the Jews," was painted on the building.

17  This incident was reported on publicly.

18        38.     On May 14, 2002, at UC Irvine, an anti-Israel demonstration sponsored by the

19  MSA and SJP featured the display of mock "body bags" of Palestinians claimed to have been

20  "murdered" by the Israeli army." This incident was reported on publicly.

21        39.     On April 15, 2002, *Al-Talib*, the MSA/SJP Muslim newsmagazine at UCLA and

22  Al Kalima, the Muslim newsmagazine at UC Irvine, jointly published a highly anti-Israel

23  publication entitled "Zionism: the Forgotten Apartheid." The magazine publicly lauds and

24  promotes both Hamas and Hizbullah as legitimate and noteworthy resistance movements. The

25  magazine has also been distributed at UC San Diego." This incident was reported on publicly.

26        40.     On March 3, 2008, the SJP sponsored a "die-in" rally on the UC Berkeley

27  campus. During the event, approximately 30 to 40 SJP student activists lay on the ground on

28  Sproul Plaza, obstructing traffic and blocking the walkway.  SJP activists held signs accusing

Israel of starting another Holocaust, and equating Israelis with Nazis.  When the SJP held anti-Israel rallies and events on the UC Berkeley campus, Jewish students peacefully gathered and held up signs to counter the false and hateful messages that the SJP promotes about Jews and Israel. The SJP has deliberately interfered with those rights, blocking the Jewish students' signs and attempting to destroy them. The incident was reported on publicly.

41.    On November 13, 2008, at a UCB-approved student "hip-hop concert" at Eshleman Hall on the UCB campus, as part of an Israel event, in violation of UCB ASUC policy, SJP student activists deliberately disrupted that concert by draping two Palestinian flags from the Eshleman Hall balcony directly over the stage and thus precipitated a riot needing response from Campus Police. ." This incident was reported on publicly.

42.    Many Jewish and non-Jewish students have complained to UCB Dean of Students Jonathan Poullard about the SJP's threatening and intimidating conduct, and about the group's violations of UC Berkeley's Code of Student Conduct.  Several Jewish students spoke up at an ASUC senate meeting on March 3, 2008, at which Dean Poullard was present.  Student after student described being harassed and intimidated by members of the SJP.  They described the SJP's refusal to follow multiple requests by police and faculty to stop their intimidating tactics.  And they described how unsafe they felt on their own campus.

43.    UCB Dean Poullard acknowledged that those who violated Jewish students' personal space and threatened their personal safety engaged in a Student Conduct violation. These infractions have occurred repeatedly.  To date, no effective disciplinary proceedings against SJP have been taken, and the SJP and MSA aggressive and offensive conduct continues.  Indeed, as evidenced by the Declaration of Maissy, as of March 17, 2011, checkpoints on campus with barbed wire and realistic-looking assault weapons continue; and a student in a wheelchair became accidentally entangled in the barbed wire.

44.    SJP student activists staged another disruption when Middle East scholar, Dr. Daniel Pipes, was invited to speak at UC Berkeley in 2004.  Although signs were posted outside the lecture hall, warning that no banners, signs, shouting or violence would be permitted, SJP student activists violated these rules without any condemnation by Defendant.

1   SJP student activists drowned out Dr. Pipes' speech several times, by chanting and jeering

2   inflammatory slogans, including "Death to Zionism," "Zionism is racism," and "Israel out of

3   Palestine." The protestors screamed "Zionist Jew" and "racist" at Dr. Pipes, and "racist Jews"

4   at the audience, chanted "Seig Heil" and gestured the Nazi salute. The disruptions continued

5   until the campus police finally had to eject many SJP student activists.

6       45.    Defendant had no known official response to the aforementioned disruptive

7   conduct staged by the SJP. This incident was reported on publicly.

8       46.    In contrast to the appeasing policies of the Regents and top UC Administrators

9   towards SJP and MSA acts of hostile environment for Jewish students, the defendant Regents

10  and top UC Administrators have discriminatorily affected much stronger disciplinary treatment

11  against campus students organizations which express arguably First Amendment protected

12  expressions with obnoxious anti-African American and/or female content:

13          (a)    Following the February 2010 Compton "cookout" where a fraternity at

14  UC San Diego held an off-campus party exhibiting offensive anti-black racist stereotypes, the

15  defendant and its top administrators voiced strong criticism of the fraternity event, mounted a

16  disciplinary investigation, and expanded its Office for Prevention of Harassment and

17  Discrimination (OPHD).

18          (b)    Following a September 2011 college Republican on-campus "increase

19  diversity Bake Sale" that priced baked goods based on color and race, the defendant and its top

20  administrators issued a statement that "the issue is not whether one thinks an action is satirical

21  . . . the issue is whether community members will be intentionally or unintentionally hurt or

22  demeaned. . . ."

23      47.    In recent years, the defendant and its top administrators have discriminatorily

24  treated incidents of on-campus lynching "noose" displays, with more severity and seriousness

25  than on-campus displays of swastika graffiti on and near Jewish-themed events and venues. In

26  addition, on information and belief, at no time in the past ten years has the defendant disclosed,

27  reported and/or issued timely warnings following SJP and MSA sponsored criminal actions, as

28  mandated by the Clery Act, 20 USC section 1092.

-16-

SECOND AMENDED COMPLAINT FOR DAMAGES, etc.                    SAC_010512f.doc
                                                             Case No. CV 11-1012 RS

**A CHILLING REMINDER OF THE DARKEST CHAPTER OF HISTORY**

48.     The aforesaid conduct, acts and omissions of defendant to tolerate and condone the aggressive and violent and threatening on-campus activities of the MSA and SJP against plaintiffs and other students of Jewish religion and ancestry is particularly ominous because defendant's actions and omissions present a disturbing echo of incitement, intimidation, harassment and violence carried out under the Nazi regime and those of its allies in Europe against Jewish students and scholars in the leading universities of those countries during the turbulent years leading up to and including the Holocaust..

49.     Plaintiffs and other students of Jewish ancestry at defendant's campuses are entitled to  the highest levels of tolerance and respect for their religious beliefs, practices, traditions and identity,. However, due to the pattern and practices of defendant to condone and allow the acts of aggressive MSA and SJP violence, confrontation and harassment alleged herein, plaintiffs and other Jewish students are despairing that the tragic lessons of history have not yet been learned by the defendant.  Plaintiffs fear that the University of California campuses are no longer places of hope and dignity, of academic and personal freedom, or of peaceful life and personal safety.

50.     As a consequence of the 2009 and 2010 assaults on Jessica Felber, her academic career at UC Berkeley was altered and severely and adversely affected, as confirmed by her declaration (see Declaration of Jessica Felber, Exhibit L).

Ms. Felber experienced at least eight significant adverse academic consequences because of Defendant Regents' failure to provide the protection afforded to her under Title VI. These included: (1) her complete loss of academic benefits at UC Berkeley during December 2010 and May 2011; and (2) her partial loss of academic benefits at UC Berkeley during March 2010 and December 2010.

(a)     Jessica Felber's complete loss of academic benefits
at UC Berkeley during December 2010-May 2011

Ms. Felber radically changed her educational plans by deciding to graduate six months before the rest of her class, because of the fear and anxiety of being on the Berkeley campus

1    after two assaults by Husam Zakharia, and the Defendant Regents' failure to adequately

2    discipline or stop Zakharia after the first assault.

3         By forcing her graduation six months early, Ms. Felber missed the opportunity to

4    participate in any campus programs during December 2010-May 2011— programs that were

5    fully afforded to other students.  During those six months (December 2010-May 2011), when

6    the rest of her classmates were completing their academic programs, Ms. Felber missed the

7    opportunity to take at least five classes, missed attending dozens of performances, missed

8    utilizing university facilities, and missed participating fully as a senior.  Her senior year was

9    drastically cut short by half due to the Defendant Regents' failure to guarantee her rights under

10   Title VI.

11                     (b)      Jessica Felber's partial loss of academic benefits

12                              at UC Berkeley during March 2010-December 2010

13        Following the second assault against Ms. Felber in March 2010, she made arrangements

14   to schedule her classes so that she could leave the campus every weekend for at least 3-4 days;

15   she did not enroll in night classes because of fear; she was not able to go to night lectures or

16   events (without an escort) because of fear; she left campus every weekend because of fear; she

17   did not participate in the on-campus Friday night religious observance because of fear; and she

18   sought counseling; and she needed legal help to obtain a state court restraining order against

19   Zakharia.  These should not be normal concerns of any college student in his/her fourth year of

20   college, but they were for Jessica Felber who had been twice assaulted by the SJP and Husam

21   Zakharia, despite the Defendant Regents' knowledge of Zakharia's SJP sanctioned racist, anti-

22   Semitic, and terrorist proclivities.

23        Felber's experiences at the 2009 and 2010 "checkpoints" were terrifying and demeaning

24   in extreme degrees.  She describes the frenzy of those wearing military uniforms and carrying

25   realistic assault weapons. The "soldiers" holding realistic looking assault weapons, and other

26   participants, shouted and yelled at passing students:  "prepare to be stopped", "what is your

27   religion", "are you Jewish?"  The first time she was stopped she was absolutely terrified.

28   No one before had ever stopped her while carrying an assault rifle, and yelling.  She was

ashamed, and was afraid to answer that she was Jewish, and she had to consciously consider lying about her identity.  She was terrified for weeks.  For the next few weeks following Apartheid Week, she was very conscious about hiding her Jewish star necklace or any other identifying Jewish symbol.

## FIRST CLAIM FOR RELIEF

### (United States Constitution–Amendments I and XIV)

51.     The allegations set forth in paragraphs 1-50 inclusive are incorporated into this cause of action by reference as if set forth in full.

52.     Defendant's actions as described above have denied Jewish students equal protection under the law in violation of the United States Constitution in that defendant's failure to adequately secure and monitor the hostile campus environment and anti-Semitic harassment by the MSA and SJP contrasts with the greater protection the Regents afford black students and female students from less obnoxious forms of on-campus racism and harassment.

53.     Defendant's actions as described above interfered with plaintiffs' free exercise of religion in violation of the First Amendment to the United States Constitution, in that they are unable to express their views, and their racial and religious identity, free from violent threats.  If defendant is not restrained and enjoined from its course of conduct, the interference will continue indefinitely.  Defendant must not allow checkpoints, realistic-looking assault weapons, barbed wire and other blockage of campus walkways, and must not allow students to interrogate others about their race, religious affiliation and national origins, during or as part of the "Apartheid Week" activities, and must not deny students equal protection under the law based on their Jewish, racial, or religious identity.

WHEREFORE, plaintiffs prays for relief as set forth below.

1

**SECOND CLAIM FOR RELIEF**

2

**(Violation of Title VI)**

3      54.     The allegations set forth in paragraphs 1-53 inclusive are incorporated into this

4  cause of action by reference as if set forth in full.

5      55.     Plaintiffs' status and identification as Jewish brings them within the scope of

6  Title VI's protections.

7      56.     Defendant has been deliberately indifferent to the complaints, words and actions

8  of those directed against plaintiffs and other Jewish UC students regarding the hostile

9  environment caused by the SJP and MSA as aforesaid.

10      WHEREFORE, plaintiffs pray for relief as set forth below.

11

**THIRD CLAIM FOR RELIEF**

12

**(Injunctive and Declaratory Relief)**

13      57.     The allegations set forth in paragraphs 1-56 inclusive are incorporated into this

14  cause of action by reference as if set forth in full.

15      58.     The actions of defendant as alleged above violate Title VI because defendant is

16  depriving plaintiffs, solely because of their Jewish religion and ancestry, of full access to the

17  facilities of the University of California, Berkeley, and defendant allows the SJP, the MSA and

18  MSU to continue to endanger the health and safety of University of California Jewish students.

19  Defendant should be ordered from allowing obstructive and violent "Apartheid Week"

20  checkpoints, and should be enjoined from allowing obstructive and violent "Apartheid Week"

21  checkpoints, brandishing realistic-looking assault weapons, barbed wire and other blockage of

22  campus walkways, and must not allow students to challenge and interrogate other students

23  about their race, religious affiliation and national origins, during or as part of the "Apartheid

24  Week" activities.

25      WHEREFORE, plaintiffs pray for relief as set forth below.

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES, etc.

SAC_010512f.doc
Case No. CV 11-1012 RS

# PRAYER

WHEREFORE, plaintiffs pray for judgment against defendant as follows:

1.     For general damages according to proof;

2.     For special damages according to proof;

3.     For an injunction against defendant from financially supporting the SJP and MSA;

4.     For a permanent injunction against defendant from allowing threats, intimidation and harassment by the SJP, the MSA and MSU which endanger the health and safety of University of California Jewish students, including not allowing checkpoints, realistic-looking assault weapons, barbed wire and other blockage of campus walkways, and must not allowing students to interrogate others about their race, religious affiliation and national origins, during or as part of the "Apartheid Week" activities;

5.     For cost of suit;

6.     For a declaration of rights, declaring that defendants extensively regulate such groups as SJP and MSA during "Apartheid Week," so that there is no threat or endangerment to the health and safety of students as has occurred at the "checkpoints," as outlined herein;

7.     For an award of damages sufficient to compensate plaintiffs for injuries suffered;

8.     For an award of costs, including attorney's fees pursuant to Title VI; and

9.     For such other and further relief as the Court finds proper.

Respectfully submitted,

/S/

Dated: January 6, 2012

_____
JOEL H. SIEGAL
Attorney for Plaintiffs
JESSICA FELBER; BRIAN MAISSY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims for relief.

Respectfully submitted,

/S/

Dated: January 6, 2012

_____

JOEL H. SIEGAL
Attorney for Plaintiffs
JESSICA FELBER; BRIAN MAISSY

# EXHIBIT "A"

## Maissy Declarations and E-mails

JOEL H. SIEGAL, ESQ. [SBN: 117044]
Attorney at Law
703 Market Street, Suite 801
San Francisco, CA 94103
Telephone:      (415) 777-5547
Facsimile:      (415) 777-5247
Email:          joelsiegal@yahoo.com

NEAL M. SHER, ESQ. [New York Bar # 1092329]
Attorney at Law
551 Fifth Avenue, 31st Floor
New York, NY 10176
Telephone:      (626) 201-8841
Email:          nealsher@gmail.com

Attorneys For Plaintiffs JESSICA FELBER; BRIAN MAISSY

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| JESSICA FELBER,<br>and BRIAN MAISSY<br><br>                    Plaintiffs,<br>vs.<br><br>MARK G. YUDOF, PRESIDENT OF<br>THE REGENTS OF THE UNIVERSITY<br>OF CALIFORNIA, BERKELEY, in his<br>individual capacity only as to damages,<br>and in his official capacity as to injunctive<br>and declaratory relief; THE REGENTS<br>OF THE UNIVERSITY OF<br>CALIFORNIA; ROBERT J.<br>BIRGENEAU, CHANCELLOR OF THE<br>UNIVERSITY OF CALIFORNIA,<br>BERKELEY, in his individual capacity,<br>as to damages, and in his official capacity<br>as to injunctive and declaratory relief;<br>JONATHAN POULLARD, DEAN OF<br>STUDENTS OF THE UNIVERSITY OF<br>CALIFORNIA, BERKELEY, in his<br>individual capacity, as to damages, and in<br>his official capacity as to injunctive and<br>declaratory relief; ASSOCIATED<br>STUDENTS UNIVERSITY OF<br>CALIFORNIA (ASUC),<br><br>                    Defendants. | Case No.  CV 11-1012 RS<br><br>**DECLARATION OF BRIAN MAISSY** |

DECLARATION OF BRIAN MAISSY

I, Brian Massy, declare:

1.    I am a third year EECS undergraduate student at the University of California Berkeley.  As such I am on campus almost all weekdays. I have personal knowledge of the facts stated herein and if called as a witness I would truthfully and competently testify as follows.

2.    On or about March 17, 2011 between 11 a.m. and 2 p.m., I observed members of the group Students for Justice in Palestine, engage in action as part of their "Apartheid Week" As I will describe fully below, as a Jewish student on campus, I have come to dread and fear "Apartheid Week," as a time where myself and other Jewish students feel endangered, intimidated, and harassed.

3.    "Apartheid Week" is a time designated by certain campus groups such as the Muslim Students Association (MSA), and the so-called Students for Justice in Palestine (SJP), to attempt to de-legitimize the existence of the State of Israel by way of asserting that Israel engages in abhorrent racist tactics, equated directly to the system of government in place by the white South African government, between 1948 and 1993.

4.    In the three years that I have been on campus, I have witnessed the events of "Apartheid Week," and in each year, I have felt endangered, intimidated and harassed.

5.    As part of "Apartheid Week," each year for the past three years, I have witnessed members of the SJP create barriers on campus in an effort to simulate what, in their view, security checkpoints are like in Israel.

6.    Many members of SJP wear Israeli flags, which contain the Jewish star, and they have signs with Hebrew writing on them; and many carry mock semiautomatic weapons that look real.

7.    The members of SJP thus pretend to be Jewish Israelis.  They set up a checkpoint at Sather Gate, where they interrogate students to determine whether they should be allowed to pass through the checkpoint, and they "act out" the supposed harassment of Palestinians on each other.

8.  I have witnessed the "interrogators" — those pretending to be Jewish Israelis — being rude, obnoxious, overbearing, aggressive and violent.

9.  I have witnessed this kind of behavior for the past three years.

10.  I personally know that the assault on Jessica Felber took place in proximate time to "Apartheid Week" on campus.

11.  I also know that the University each year approves "Apartheid Week."

12.  On March 17, 2011, I specifically observed the following on campus. I saw the students from SJP (dressed like Israeli Jews) blocking most of Sather Gate. I observed that they had put down a material which looked like barbed wire or at least was supposed to simulate barbed wire at the checkpoint at Sather Gate.

13.  I personally observed the simulated "barbed wire" get caught in an individual's wheelchair, and he dragged it with him for a few feet, at which point he realized, and others assisted him to disentangle his wheelchair; hence, his independence and ability to move around campus was blocked and inhibited by persons who were wearing Israeli flags.

14.  Following witnessing the student in the wheelchair getting stuck in the "barbed wire," I wrote Dean Poullard describing the situation; the full text of my email is as follows:

> "Hi JP and representative of the Center for Student Conduct,
>     As you may be aware, the student group Students for Justice in Palestine (SJP) held a mock checkpoint demonstration at Sather Gate the Thursday before spring break (March 17th) between 11am and 2pm. They were, as usual, spreading falsehoods about Israel, but that's not why I'm writing to you today.
>     On the 17th, members of SJP dressed up as Israeli soldiers and acted out what they falsely assert happens at an Israeli security checkpoint. They blocked the central section of Sather gate with caution tape and wire laid on the floor. This obstruction caused difficulty to students trying to pass through Sather Gate. I personally witnessed a disabled student get his wheelchair caught on the wire as he tried to cross the gate on his way to or from class. This is in clear violation of Berkeley Campus Regulations Implementing University Policy clause 321. They also brandished fake weapons and intimidated passers-by, in violation of clauses 211 and 312 requiring compliance with state law (California Penal Code section 12556 bans toy and look-alike weapons in public places).
>     Neither of these offences comes as a surprise. Both of these violations have become an annual occurrence by SJP, and have been repeatedly reported to UCPD and to the Center for Student Conduct. Year

DECLARATION OF BRIAN MAISSY

after year however, we get no response, and more importantly, the offenders do not change their actions.

The purpose of the Center for Student Conduct is to create an atmosphere on campus where the values of the university are realized, where students and student groups adhere to campus policies, and where students feel safe and comfortable walking down Sproul plaza. SJP consistently and systematically violates University rules, at the expense of students who are innocently passing by and wish to ignore them. SJP must respect the rules and play fairly like every other student group. The failure of the university to correct the problem contributes to the unsafe atmosphere that many Jewish students feel exists and is growing on this campus.

I hope this issue will finally be addressed with SJP and there will be no more obstructions of public walkways, wielding of imitation weapons, or other intimidating actions on their part in the future.

Thank you,
Brian Maissy
Third year EECS undergraduate"

15. On March 29, 2011 Dean Poullard wrote me back. The full text of Dean Poullard's email is as follows:

"On Tue, Mar 29, 2011 at 1:19 PM, <poullard@berkeley.edu wrote:
Brian,

Thank you for your thoughtful email. Hopefully my response will help to once again clarify the role and responsibilities of the Center for Student Conduct and Community Standards, the Center for Student Leadership and UCPD.

As you have aptly noted, members of SJP have held events that simulate their perception of an Israeli checkpoint and have used Sproul Plaza and Sather Gate as sites for their activities. Consistent with past demonstrations, SJP has worked with CSL and UCPD to stage their activity and have followed guidelines to hold their event. While there was a moment of difficulty that a student in a wheelchair had in passing the demonstration, CSL staff and UCPD officers watched SJP members quickly assist the person in passing the checkpoint on March 17, 2011. The organizers then placed one of their members in the area to further assist any other individuals in passing the demonstration in that area. Additionally, UCPD reviewed the fake weapons they were utilizing in their demonstration. which were made of think wooden boards, to ensure that they were aligned with the provisions of the California Penal Cide set forth in section 12556.

We continue to uphold student's rights to protest/hold demonstrations as long as they comport with policies set for such activities. That said, I am more than willing to meet you and any other interested students on this matter.

JP"

DECLARATION OF BRIAN MAISSY

16.     Upon receiving Dean Poullard's response on March 29, I wrote him back.. The full response of my email is as follows:

Subject: Re: SJP repeated violation of campus policy
From:   "Brian Maissy" <brianmaissy@berkeley.edu
Date:   Tue, March 29, 2011 1:33 pm
To:     poullard@berkeley.edu
Cc:     studentconduct@berkeley.edu
        trageser@berkeley.edu
        mjc@berkeley.edu
        acarlton@berkeley.edu
------------------------------------------------------------------------

I don't see how helping students who have difficulty crossing the barricade makes it any less of a barricade, in the middle of a major walkway on campus. It was disrupting traffic. I have never seen another student group need to block traffic on campus to get their message across.

Additionally, their materials were attached to Sather Gate, which is also against campus policy.

"352. Tables and other display materials may not block any entrance or walkway, or otherwise restrict the free flow of vehicular or pedestrian traffic. No display materials may be placed on or against, or be attached to any structure or natural feature of the campus, including, but not limited to the sides of doors or buildings, fountains, posts, waste receptacles, trees or stakes."

It seems that SJP was in clear violation of this regulation on both counts. Are you saying CSL staff and UCPD think that SJP did not violate this policy, or did they grant them an exception?
Brian"

18.     I am a Jewish student. I do not feel safe on my campus because of the actions of a few radical groups. Clearly, as confirmed by the email from Dean Pollard (actual emails attached hereto) the student in a wheelchair was also affected by the actions of a radical group on campus.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct, and that I signed this declaration on May 9, 2011, in Berkeley, California.

/S/
_____
BRIAN MAISSY

The right car insurance can
save you more than you think.

TRAVELERS

From: Brian Maissy <br...nmaissy@berkeley.edu>

Subject: Re: SJP repeated violation of campus policy
To: poullard@berkeley.edu
Cc: studentconduct@berkeley.edu, trageser@berkeley.edu, mjc@berkeley.edu, acarlton@berkeley.edu
Date: Tuesday, March 29, 2011, 1:33 PM


I don't see how helping students who have difficulty crossing the barricade makes it any less of a barricade, in the middle of a major walkway on campus. It was disrupting traffic. I have never seen another student group need to block traffic on campus to get their message across.

Additionally, their materials were attached to Sather Gate, which is also against campus policy.

"352. Tables and other display materials may not block any entrance or walkway, or otherwise restrict the free flow of vehicular or pedestrian traffic. No display materials may be placed on or against, or be attached to any structure or natural feature of the campus, including, but not limited to the sides of doors or buildings, fountains, posts, waste receptacles, trees or stakes."

It seems that SJP was in clear violation of this regulation on both counts. Are you saying CSL staff and UCPD think that SJP did not violate this policy, or did they grant them an exception?

Brian

On Tue, Mar 29, 2011 at 1:19 PM, <poullard@berkeley.edu> wrote:

Brian,

Thank you for your thoughtful email. Hopefully my response will help to once again clarify the role and responsibilities of the Center for Student Conduct and Community Standards, the Center for Student Leadership and UCPD.

As you have aptly noted, members of SJP have held events that simulate their perception of an Israeli checkpoint and have used Sproul Plaza and Sather Gate as sites for their activities. Consistent with past demonstrations, SJP has worked with CSL and UCPD to stage their activity and have followed guidelines to hold their event. While there was a moment of difficulty that a student in a wheelchair had in passing the demonstration, CSL staff and UCPD officers watched SJP members quickly assist the person in passing the checkpoint on March 17, 2011. The organizers then placed one of their members in the area to further assist any other individuals in passing the demonstration in that area. Additionally, UCPD reviewed the fake weapons they were utilizing in their demonstration. which were made of think wooden boards, to ensure that they were aligned with the provisions of the California Penal Cide set forth in section 12556.

We continue to uphold student's rights to protest/hold demonstrations as long as they comport with policies set for such activities. That said, I

am more than willing to meet you and any other inter    d students on this matter.

JP


Hi JP and representative of the Center for Student Conduct,
>
> As you may be aware, the student group Students for Justice in Palestine
> (SJP) held a mock checkpoint demonstration at Sather Gate the Thursday
> before spring break (March 17th) between 11am and 2pm. They were, as
> usual, spreading falsehoods about Israel, but that's not why I'm writing to you
> today.
>
> On the 17th, members of SJP dressed up as Israeli soldiers and acted out
> what they falsely assert happens at an Israeli security checkpoint. They
> blocked the central section of Sather gate with caution tape and wire laid
> on the floor. This obstruction caused difficulty to students trying to
> pass through Sather Gate. I personally witnessed a disabled student get his
> wheelchair caught on the wire as he tried to cross the gate on his way to
> or
> from class. This is in clear violation of Berkeley Campus Regulations
> Implementing University Policy clause 321. They also brandished fake
> weapons and intimidated passers-by, in violation of clauses 211 and 312 requiring

> compliance with state law (California Penal                e section 12556 bans toy
> and look-alike weapons in public places).
>
> Neither of these offences comes as a surprise. Both of these violations
> have become an annual occurrence by SJP, and have been repeatedly reported to
> UCPD and to the Center for Student Conduct. Year after year however, we
> get no response, and more importantly, the offenders do not change their
> actions.
>
> The purpose of the Center for Student Conduct is to create an atmosphere
> on campus where the values of the university are realized, where students and
> student groups adhere to campus policies, and where students feel safe and
> comfortable walking down Sproul plaza. SJP consistently and systematically
> violates University rules, at the expense of students who are innocently
> passing by and wish to ignore them. SJP must respect the rules and play
> fairly like every other student group. The failure of the university to
> correct the problem contributes to the unsafe atmosphere that many Jewish
> students feel exists and is growing on this campus.
>
> I hope this issue will finally be addressed with SJP and there will be no
> more obstructions of public

walkways, wieldi    f imitation
weapons, or
> other intimidating actions on their
part in the future.
>
> Thank you,
>
> Brian Maissy
> Third year EECS undergraduate

JOEL H. SIEGAL, ESQ. [SBN: 117044]
Attorney at Law
703 Market Street, Suite 801
San Francisco, CA 94103
Telephone:      (415) 777-5547
Facsimile:      (415) 777-5247
Email:          joelsiegal@yahoo.com

NEAL M. SHER, ESQ. [New York Bar # 1092329]
Attorney at Law
551 Fifth Avenue, 31st Floor
New York, NY 10176
Telephone:      (646) 201-8841
Email:          nealsher@gmail.com

Attorneys For Plaintiffs JESSICA FELBER and BRIAN MAISSY

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JESSICA FELBER and BRIAN MAISSY<br><br>                    Plaintiffs,<br><br>vs.<br><br>MARK G. YUDOF, PRESIDENT OF THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, BERKELEY, in his individual capacity only as to damages, and in his official capacity as to injunctive and declaratory relief; THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; ROBERT J. BIRGENEAU, CHANCELLOR OF THE UNIVERSITY OF CALIFORNIA, BERKELEY, in his individual capacity, as to damages, and in his official capacity as to injunctive and declaratory relief; JONATHAN POULLARD, DEAN OF STUDENTS OF THE UNIVERSITY OF CALIFORNIA, BERKELEY, in his individual capacity, as to damages, and in his official capacity as to injunctive and declaratory relief; ASSOCIATED STUDENTS UNIVERSITY OF CALIFORNIA (ASUC),<br><br>                    Defendants. | Case No.  CV 11-1012 RS<br><br>**DECLARATION OF BRIAN MAISSY IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION**<br><br><br>Date:          September 22, 2011<br>Time:          1:30 p.m.<br>Dept:          Courtroom 3, 17th Floor<br>Judge:          Honorable Richard Seeborg<br><br>Complaint Filed:  March 4, 2011 |

I, Brian Maissy, declare:

1.      I am a plaintiff in this case.  I have personal knowledge of the facts stated herein.  if called to testify I would truthfully and competently testify as follows.

2.      This declaration is a supplemental declaration to my declaration in the First Amended Complaint ("FAC").  I have reviewed all of the photos in the First Amended Complaint.  I was personally present at the scenes depicted in the photographs, and they accurately depict the events that I observed.

3.      I began my studies at UC Berkeley in August 2008.  At the time that I began my studies I was only eighteen years old.  I am from Southern California.  Coming to Berkeley was the first time that I had lived away from home.  I am approximately 5'3" and weigh approximately 125 pounds.  I am an observant Jew.  As such I wear a kippah (a skull cap) at all times.  I have a beard.  These are both symbols of being an observant Jewish male.

4.      During my time on campus I experienced situations that made me feel not only uncomfortable but also fearful because of my Jewish background.

5.      Each year in March, the University allows the SJP and the MSA to put on a series of events called Apartheid Week.

6.      A component of Apartheid Week each year is the "checkpoint" that the University allows MSA and SJP to set up on campus.  I have observed three so far, in 2009, 2010, and 2011. My declaration in the First Amended Complaint describes in part what I observed there.  The photos of 2011 and 2010 and 2009 accurately depict students from MSA and SJP holding realistic looking guns.  What the photos do not show is the students yelling at passing innocent students, with such taunts as "Are you Jewish?", and "Prepare to be stopped and show your identification, and be ready for inspection."  It is very violent and there is a lot of shouting and commotion. Some of the people doing the shouting and causing the commotion are wearing Jewish Stars of David.  It is a terrifying week on campus.  It occurs right at Sather Gate, at a central location on campus, and is difficult to avoid.  The event frightens students on campus who happen to be walking by.  The University has done nothing to protect me and other Jewish students from this Apartheid Week checkpoint harassment.

1        7.    Another very difficult event for me and other Jewish students occurred during

2    the ASUC senate discussions about divestment from companies doing business with Israel in

3    the spring of 2010.  While all students should have rights to express their opinions on campus,

4    much of the discussion calling for divestment from Israel were efforts to demonize the Jewish

5    state.  When students such as myself raised other views, we were sometimes heckled and

6    shouted down.  The University made no visible effort to moderate and make the debate civil.

7    Rather the University allowed the heckling to continue unabashed.

8        8.    Following the assault on Jessica Felber, there have been times when I was

9    scared for my safety on campus. Although I cannot say for sure whether my grades have

10   suffered, I know that at times my ability to concentrate and study has suffered due to the stress.

11       I declare under penalty of perjury under the laws of the State of California, that the

12   foregoing is true and correct, and that I signed this declaration on August 5, 2011, in Rancho

13   Santa Margarita, California.

14                  /S/

15

16                BRIAN MAISSY

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF BRIAN MAISSY IN OPPOSITION TO DEFS' 12(b)(6) MOTION

MaissyDec_072111c.doc
Case No. CV 11-1012 RS

# EXHIBIT "B"

## SJP and MSA Students

## Brandishing Realistic-Looking Assault Weapons









